# Richmond.

## MARY D. BAMBER, IN HER OWN RIGHT AND AS GUARDIAN OF JESSIE BAMBER AND GLADYS BAMBER, v. CITY OF NORFOLK.

### January 17, 1924.

1. WORKMEN'S COMPENSATION ACT—*"Principal Contractor"—Liability of City to Employee of Independent Contractor—Case at Bar.*—In the instant case, a proceeding under the workmen's compensation act, defendant city in its proprietary capacity was engaged in maintaining a water system and in selling water, and entered into a contract with deceased's employer for the erection of a standpipe by the employer for the city. Deceased was killed in the course of his employment while working on the standpipe.

   *Held:* That the city was not liable as "principal contractor" under section 20 (a) of the workmen's compensation act of 1918.

2. WORKMEN'S COMPENSATION ACT—*Section 20 (a) of the Act—Owner Not "Principal Contractor."*—Section 20 (a) of the workmen's compensation act of 1918 provides that the "principal contractor" shall be liable to pay compensation to workmen employed by subcontractors, and defines a principal contractor as "any person (who) undertakes to execute any work, which *is* a part of his trade, business or occupation * * * and contracts," etc.

   *Held:* That principal contractor does not mean any person, who, as owner, undertakes to have any work executed for him by another, not as an employee, but as an independent contractor, which work is not yet "a part of," but which, when completed, is *intended to be used* in the owner's trade, business, or occupation.

3. WORKMEN'S COMPENSATION ACT—*Section 20 (a) of the Act—Owner Not "Principal Contractor."*—It appears from the terms of section 20 (a) of the workmen's compensation act of 1918, when construed along with the general provisions of the act, that the section was not intended to apply to any owner, but only to some independent contractor who undertakes to do such work as is mentioned in the section for an owner or someone else, which independent contractor sublets the work or some part of it to at least one other independent contractor, who employs the workman mentioned in the section upon the work which is sublet.

4. WORKMEN'S COMPENSATION ACT—*Section 20 (a) of the Act—To What Cases Applicable—Relation of Master and Servant.*—From the terms of section 20 (a) of the workmen's compensation act of 1918 the section is applicable only to cases in which there are at least four persons in interest, namely:   (1) An owner or other person who is having the work executed for himself; (2) an independent contractor who has undertaken to execute the work for the person first mentioned; (3) a subcontractor, between whom and the independent contractor (the person secondly mentioned), there is a contract for the execution by or under the subcontractor of the whole or some part of the work; and (4) a workman "employed in the work." Where there are four such persons in interest, the section does depart from the classification made by the general provisions of the act, based on the existence of the relationship of master and servant between the person liable and the workman.

5. WORKMEN'S COMPENSATION ACT—*Section 20 (a) of the Act—Owner Not "Principal Contractor."*—If there was any doubt that the "principal contractor," referred to in section 20 (a) of the workmen's compensation act of 1918, did not include the owner of property who employs an independent contractor to do work for him, it is set at rest by the amendment of 1920 (Acts 1920, page 257), which provides that nothing in the act should be construed to make the employees of an independent contractor the employees of the person contracting with him.

6. WORKMEN'S COMPENSATION ACT—*Construction.*—The workmen's compensation act is to be given a liberal construction to the end that its wise and humane purpose may be advanced.   But its provisions cannot be extended by construction so as to cover persons or occupations not within its scope and intent.

7. WORKMEN'S COMPENSATION ACT—*Section 20 (a) of the Act—Municipal Employees—Case at Bar.*—In the instant case it was earnestly urged in argument that all employees upon municipal work are embraced in the Virginia workmen's compensation act, and that section 20 (a) was enacted to prevent municipalities from escaping the jurisdiction of the act by letting its work to contract.   The reply to this is that the act does not embrace all employees upon municipal work, but only those employed by the municipality itself and in work which it is the business of the municipality to execute.   Moreover, section 20 (a), because of its terms, embraces other than municipalities and hence cannot be considered as applicable especially to municipalities.

Error to a judgment of the Circuit Court of Nansemond county, in a proceeding under the workmen's

compensation act.    Judgment for defendant.    Claimant assigns error.

*Affirmed.*

This is an appeal by the claimant, Mary D. Bamber, in her own right and as guardian of the infant children mentioned in the caption, from the decision of the court below, setting aside the award of the Industrial Commission of the claim of petitioner against the defendant, the city of Norfolk, under the workmen's compensation law in force on August 18, 1922, the date of the accident and death resulting therefrom of F. P. Bamber, the husband of the claimant and father of the children (Acts 1918, page 637, *et seq.*, as amended by Acts 1920, page 256 *et seq.*, and Acts 1922, page 741, *et seq.*), of compensation from the city for the injury which resulted in such death.

The findings of fact of the Industrial Commission, so far as material, were as follows:

"The deceased (F. P. Bamber), whose widow, Mary D. Bamber, is the principal claimant in this case, was an employee of a Mr. Birchett, who, under a written contract with the city of Norfolk, was engaged in erecting a standpipe outside of the said city.    The standpipe was a necessary portion of the works incident to the city's water supply.    On August 18, 1922, the employee, F. P. Bamber, fell from a scaffold and was killed.    The death arose out of and in the course of the employment. * * *    The only controversy was whether or not Birchett was a subcontractor of the city within the meaning of section 20 of the compensation act.    If he was, then the claimant might properly look to the city as the principal for compensation under that section of the compensation act.    Pursuant to this contention considerable testimony was taken, briefs were filed and

the contract was introduced.    The tendency of the evidence and of the arguments in briefs appears to be to establish that Birchett was an independent contractor.

\*    \*    \*    \*    \*    \*    \*    \*    \*

"In its proprietary capacity the city of Norfolk is engaged in maintaining a water system and in selling water to its inhabitants.    The city owns all equipment, pipe lines, pumping stations and even the sources of water supply.    A usual and necessary incident to maintaining a water system is the repair of old pipe lines, establishing new lines and maintaining in general all of its works.    Enlargements, with the necessary construction, are frequent as the population of a city grows.    The building of a standpipe is a necessary incident to the maintenance of the proper pressure throughout the water mains    \*    \*    \*    that the foundation for the standpipe was laid by the city."

The conclusion of law of the Industrial Commission, so far as material to be stated, was "that Birchett was a subcontractor of the city of Norfolk within the meaning of section 20" of the compensation act; which was, in effect, the holding that the city was liable as "principal contractor" under such section of such statute.

Upon the appeal to the court below by the city of Norfolk, that court by final order set aside the aforesaid award, and from that order the pending appeal was allowed.

*W. S. Morris, Jr.*, and *Frank W. Rogers*, for the plaintiff in error.

*R. W. Peatross, John B. Jenkins, Jr.*, and *Edmund S. Ruffin, Jr.*, for the defendant in error.

*Woods, Chitwood, Coxe & Rogers*, for the Industrial Commission of Virginia, as *amicus curiae*.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court:

The questions presented by the assignments of error will be disposed of in their order as stated below.

[1] 1. Is the city of Norfolk liable in the instant case as "principal contractor" under section 20 (a) of the workmen's compensation law, as the act stood when the accident and death involved occurred?

The question must be answered in the negative.

Said section 20 (a) has not been amended and it stood at the time of the accident and death involved in the instant case, and still stands, as originally enacted (Acts 1918, at pages 641-2), and is as follows:

"Section 20 (a). Where any person (in this section referred to as principal contractor) undertakes to execute any work, which is a part of his trade, business or occupation, or which he has contracted to perform, and contracts with any other person (in this section referred to as subcontractor) for the execution by or under the subcontractor of the whole or any part of the work undertaken by such principal contractor, the principal contractor shall be liable to pay to any workman employed in the work any compensation under this act which he would have been liable to pay if that workman had been immediately employed by him; and where compensation is claimed from or proceedings are taken against the principal contractor, then, in the application of this act, reference to the principal contractor shall be substituted for reference to the subcontractor, except that the amount of compensation shall be calculated with reference to the earnings of the workman under the subcontractor by whom he is immediately employed."

[2] This section itself defines who is a "principal contractor" within its meaning, namely, "any person" (who) "undertakes to execute any work, which is a part

of his trade, business or occupation, or which he has contracted to perform, and contracts," etc. It is obvious that the city in the instant case did not *contract* to perform the work, so that we may eliminate from our consideration the language "or which he has contracted to perform." The definition would then read that a principal contractor is "any person (who) undertakes to execute any work, which *is* a part of his trade, business or occupation * * * and contracts" etc. Does this mean any person who, as *owner*, undertakes to have any work executed for him by another, not as an employee, but as an independent contractor, which work is not yet "a part of," but which, when completed, is *intended to be used* in the owner's trade, business or occupation? We do not think so. If the language means that, it would embrace all owners who have any work executed for themselves by an independent contractor when the work is intended to be used, when completed, in the owner's trade, business or occupation, as the section is not confined in its application to municipal owners, but embraces all other owners in the same situation, if it embraces any owners in that situation. Further, if "undertakes to execute" could be given the meaning of "undertakes to have executed," that would be to disregard the express provisions of the section, that to constitute any person a "principal contractor," within the meaning of the section, he must be one who undertakes to execute a work "which is a part of his trade, business or occupation," *i. e.*, such work as is a part of his trade, business or occupation *to execute,* which negatives the construction that the work mentioned is every work which is intended *to be used,* when completed, in the trade, business, or occupation of the person for whom it is executed.

To give to the section the meaning that a principal

contractor is anyone who, although the owner, under-
takes to have any work executed for himself, not by the
employment of workmen, but by contracting for the re-
sult with an independent contractor, would result in
construing section 20 (a) as designating any workman
employed in the execution of any work as entitled to
compensation from the person who would be the owner
of the work when completed, who intends to use it in
his trade, business or occupation. That is to say, this
would be a classification of persons liable and of work-
men embraced under the act based solely on the future
use to which the work is to be put, when completed, in
the execution of which the workman is employed,
irrespective of whether the relationship of master and
servant exists, or does not exist, between the owner
and the workman. We find no such classification in
section 20 (a); nor in any other provisions of the act.

As said by this court in *Mann* v. *Lynchburg*, 129 Va.
453, at page 459, 106 S. E. 371, 373: "It would seem
clear from the history and purposes and general pro-
visions of the act that the legislature did not have in
mind as beneficiaries any other persons than such as
are commonly understood as falling within contractual
relationship of master and servant. It often happens
that cities and towns *employ* large forces of men in
connection with municipal undertakings, such as the
construction of sewers, the building of streets, the
operation of rock quarries and other similar and more
or less hazardous occupations akin to those undertaken
by individuals and industrial corporations. The legis-
lature undertook to make an improvement upon the
remedies hitherto existing in cases of *employees* re-
ceiving personal injuries, and who might or might not,
according to the particular facts of the case, have a
cause of action against the *employer* on the ground of

negligence or breach of duties, and manifestly the idea was that this remedy should be provided for those who theretofore stood in such a relationship as that there might be in cases of negligence a liability on the employer." (Italics supplied.)

[3, 4] And we think that it appears from the terms of section 20 (a) aforesaid, itself, when construed along with the general provisions of the act, other than the amendment to section 12, presently to be mentioned, that section 20 (a) was not intended to apply to any owner, but only to some independent contractor who undertakes to do such work as is mentioned in the section for an owner or someone else, which independent contractor sublets the work or some part of it to at least one other independent contractor who employs the workman mentioned, in the section upon the work which is sublet. In other words, we are of opinion that it appears from the terms of the section under consideration that it is applicable only to cases in which there are at least four persons in interest, namely: (1) An owner or other person who is having the work executed for himself; (2) an independent contractor who has undertaken to execute the work for the person first mentioned; (3) a subcontractor, between whom and the independent contractor (the person secondly mentioned), there is a contract for the execution by or under the subcontractor of the whole or some part of the work; and (4) a workman "employed in the work." Where there are as many as such four persons in interest, section 20 (a) does depart from the classification aforesaid made by the general provisions of the act, based on the existence of the relationship of master and servant between the persons liable and the workman embraced in the provisions of the act, and does make, for the purposes of the act, the employees of a

subcontractor (who is an independent contractor), the employees of the principal contractor (who is also an independent contractor), notwithstanding the fact that in such case the relationship of master and servant does not exist as between the principal contractor and the employees of the subcontractor; but this, we think, is the extent of the departure made by section 20 (a) from the aforesaid classification made by the other provisions of the act.

[5] We are further of opinion that if there could have been any reasonable doubt as to the meaning as above held being the meaning of the section 20 (a) prior to the amendment of the act which was enacted by the legislature of 1920 (Acts 1920, at page 257) (which amendment was in force when the instant case arose), it is set at rest by such amendment. That amendment is as follows:

"Nothing in this act contained shall be construed to make, for the purposes of this act, the employees of an independent contractor, the employees of the person or corporation employing or contracting with such independent contractor."

The concluding portion of this amendment obviously has reference to all owners and others, including municipal corporations, having work executed by employing or contracting with an independent contractor. That is precisely what was done by the city of Norfolk in the instant case. The city was the owner, having the work (the standpipe) executed by Birchett, the principal contractor (who was also an independent contractor), by "contracting with such independent contractor" for the whole of such work. Bamber, the injured workman employed in the work, was an employee of Birchett "an independent contractor." Hence, by the express terms of the amendment, "by nothing in (the) act,"

can the workman, Bamber, an employee of Birchett, "an independent contractor," be construed to have been made an employee of the city of Norfolk, "the person or corporation   *   *   contracting with such independent contractor," which would be the result of construing section 20 (a) as contended for in behalf of the claimant in the instant case.

[6] In reaching the above conclusion we are not unmindful of the consideration that the act under consideration is to be given a liberal construction "to the end," as said in *Mann* v. *Lynchburg*, 129 Va. 453, 106 S. E. 371, "that its wise and humane purpose may be advanced." But, as also said in that case, "we cannot extend its provisions by construction so as to cover persons or occupations not within its scope or intent."

In argument, in opposition to the conclusion which we have reached above, the following mentioned decisions have been relied upon:

*Federated Shop Crafts* v. *Indiana Harbor Belt Railroad Co.* (1922), 3 Dec. N. S. R. R. Labor Board 332; the decision of Judge Crump of the law and equity court of the city of Richmond affirming the decision of the Industrial Commission in *Bray* v. *Phaup & Tinsley* 1 Ind. Com. Dec. 13th; *Mulrooney* v. *Todd* (1909), 1 K. B. 165, 169; *American Steel Foundries* v. *Industrial Board*, 284 Ill. 99, 119 N. E. 902, 903.   We find upon examination of them that none of these cases is in point.

In *Federated Shop Crafts* v. *Indiana Harbor Belt Railroad Co.* the United States Labor Board held that employees engaged in the customary work directly contributory to the operation of railroads, although in the immediate employment of independent contractors with the railroad, are embraced within the provisions of the transportation act of 1920 (U. S. Comp. St. Ann, Supp. 1923, §10071¼eee), enjoining upon all carriers

and their officers, employees and agents the duty to "exert every reasonable effort and adopt every available means to avoid any interruption to the operation of any carrier growing out of any dispute between the carrier and the employees or subordinate officials thereof." But this holding was reached as the result of the holding that the classification made by the transportation act of the employees embraced within its provisions was of all employees "engaged in the customary work directly contributing to the operation of railroads," which is a classification of persons liable and of workmen embraced under the act, based solely on the future use to which the work is to be put, when completed, in the execution of which the workman is employed irrespective of whether the relationship of master and servant exists, or does not exist, between the owner and the workman. That, as we have above seen, is an entirely different classification from that made by section 20 .(a) of the Virginia workmen's compensation law.

Neither the decision, nor the opinion of Judge Crump affirming the decision, of the Industrial Commission in the case of *Bray* v. *Phaup & Tinsley* appears to have been reported, and neither is before us. It is, however, stated in the record before us that Judge Crump, in such opinion, written by him when he rendered such decision, said this:  "Whatever may be the intention of the act the result of its language is to abrogate the technical doctrine of independent contractor as understood in the law of master and servant."   This is all of the opinion which we have before us and we assume that what is said has reference to the parties before the Industrial Commission and court in that case.   From the report of the decision of the Industrial Commission in that case (1 Ind. Com. Dec. 13th, *supra*), it appears from the finding of facts by the Commission that there

were four persons in interest involved:    (1) The Council of Defense, owner of the felled trees or timber, which they intended to sell to the people in and about the city of Richmond at a certain price per cord; (2) Phaup & Tinsley (principal contractors), who agreed, under contract with the Council of Defense, to gather, saw and deliver the wood to the consumer in Richmond at a certain price per cord; (3) Leonard & McNamee, (subcontractors) who agreed, under contract with Phaup & Tinsley (principal contractors), to saw, load and haul the wood to the railroad at a certain price per cord; and (4) Bray, the claimant, the injured workman engaged in the last named work, who was employed by Leonard & McNamee. The claim for compensation was asserted by Bray against Phaup & Tinsley, the principal contractors, not against the owner (the Council of Defense) who intended to use the work when completed (sawed into and delivered as cord wood) in their business of selling cord wood to the people in and about the city of Richmond. The Commission held that Phaup & Tinsley were liable under section 20 (a) of the workmen's compensation law to pay the compensation provided therein to the claimant, notwithstanding the fact that the claimant was not in fact an employee of Phaup & Tinsley, but was employed by Leonard & McNamee (the subcontractors). This holding, and the decision of Judge Crump affirming it, was in entire accord with our views and holding above set forth with respect to the proper construction of the section mentioned.

In *Mulrooney* v. *Todd* (1 K. B. 165, 169), the English workman's compensation act of 1906 was involved, and the court held that the municipality was liable as a "principal" under subsection 1 of section 4 of that act, when read in the light of the definition of what should

be deemed the trade or business of a public authority contained in clause 13 of the act, where the injured workman was employed by an independent contractor in work which the municipality had undertaken to execute, by letting the work by contract with an independent contractor (the work consisting of pulling down a ruinous building upon and removing the rubbish from the site of a lot which the municipality had purchased for the purpose of extending the municipal market), and which work the municipality had the power and was charged with the duty to perform.

Subsection 1 of section 4 of said English act (Pub. Gen. Acts 6 Edw. VII, 1906, page 329) was as follows:

"4—(1). When any person (in this section referred to as the principal), in the course of or for the purpose of his trade or business, contracts with any other person (in this section referred to as the contractor) for the execution by or under the contractor of the whole or any part of any work undertaken by the principal, the principal shall be liable to pay any workman employed in the execution of the work any compensation under this act which he would have been liable to pay if that workman had been immediately employed by him; and where compensation is claimed from or proceedings are taken against the principal, then, in the application of this act, reference to the principal shall be substituted for reference to the employee, except that the amount of compensation shall be calculated with reference to the earnings of the workman under the employer by whom he is immediately employed.

"Provided, that if, where the contract relates to threshing, ploughing, or other agricultural work, the contractor provides and uses machinery driven by mechanical power for the purpose of such work, he and he alone shall be liable under this act to pay compensation to any workman employed by him in such work."

The first paragraph of this subsection is very similar to section 20 (a) of the Virginia workmen's compensation law involved in the case in judgment, except that the language *"for the purpose of* his trade or business" (italics supplied), in that paragraph itself, more strongly indicates the intention to classify the work by the use that is to be made of it when completed, than does the language of section 20 (a) of the Virginia statute. But there is nothing in the Virginia statute at all similar to the proviso—the second paragraph of the English statute—nor to the aforesaid definition contained in section 13 of the English statute.

The last named definition in the English statute (at page 338) is as follows:

"The exercise and performance of the powers and duties of a local or public authority shall, for the purposes of this act, be treated as the trade or business of the authority."

The court, in the opinion, says this: "If section 4, subsection 1, stood alone, without the proviso, I think there would be great force in the contention that the section was intended to operate only in cases where you had first a contract and then a subcontract,   *   *   But that view is impossible, and it is admitted to be impossible when the section is read as a whole with the proviso as regards agricultural work, for the farmer is never a contractor."

Now, as aforesaid, the Virginia statute contains no such proviso as that mentioned, contained in the English statute, hence the holding of the English court under consideration, instead of being contrary to, supports our holding set out above with respect to the proper construction of the Virginia statute.

Moreover, as appears from the opinion, the English court arrived at its holding that the municipality was

liable as principal because of the further consideration that the English act contained the aforesaid definition of what should be deemed the trade or business of "a public authority." The court held that this was "a peculiar definition," and that reading the words of that definition into section 4, subsection 1, of the (English) act, it would run thus: "Where any person—that is the local authority—(in this section referred to as principal), in the course of or for the purposes of the exercise and performance of his powers and duties, contracts with any other person (in this section referred to as contractor) for the execution by or under the contract of the whole or any part of any work undertaken by the principal, the principal shall be liable to pay to any workman employed in the execution of the work any compensation under this act which he would have been liable to pay if that workman had been immediately employed by him; * *" And the court held that—under the language of section 4, subsection 1, taken with the aforesaid interpretation clause of section 13, the work involved in that case "was work which the corporation as principals undertook in the execution of their powers and duties"—*i. e.* that the aforesaid two portions of the English statute rendered municipal corporations liable to pay the compensation provided in the act to all workmen employed in work which the municipality lawfully · undertook, whether directly or by means of an independent contractor, where the workman are injured while employed in such work. That is a classification of municipal persons liable and of workmen embraced under the act, based, not on the trade, business or occupation of the municipality, but upon the consideration that the work in which the injured workmen is employed at the time of his injury was municipal work—which is wholly different from any classification contained in the Virginia statute.

In *American Steel Foundries* v. *Industrial Commission*, 284 Ill. 99, 119 N. E. 902, the section (31) of the Illinois workmen's compensation act involved, so far as material, contained the following express provisions: "Any person, firm or corporation, who undertakes to do *or contracts with others to do, or have done, for him,* them or it any work enumerated (in the act) as extra hazardous, requiring employment of employees, in, on, or about the premises   *   *   *   and does not require of the person, firm or corporation undertaking to do such work for said principal, or principals, that such person, firm or corporation undertaking to do such work shall insure his, their, or its liability to pay the compensation provided in this act to his, their, or its employees   *   *   *   such person, firm or corporation shall be included in the term 'employer' and with the immediate employer shall be jointly and severally liable to pay the compensation herein provided for and be subject to all the provisions of this act." (Italics supplied.)

The court, in its opinion holding the American Steel Foundries (a private corporation) liable to pay the compensation provided by the act for the injury resulting in the death of a workman engaged in the work of wrecking a smokestack (which was extra hazardous work), while in the employment of one Malone, with whom the corporation contracted to do the work, said this: "*   *   the legislature embodied section 31 of the act, imposing liability for compensation upon every person who should contract with another to do or have done for him any work enumerated in the act as extra hazardous, and who failed to require the one undertaking to do the work to insure his liability to pay the compensation provided in the act to any employee who might be injured while engaged in that work in or about the

premises of the one for whom the work was being done. The description of the person upon whom section 31 imposed liability included any person, firm or corporation who 'contracts with others to do or have done for him, them or it any work enumerated as extra hazardous'." It is abvious that such a classification is very different from that of section 20 (a) of the Virginia statute.

[7] It is earnestly urged in argument, to sustain the decision of the Industrial Commission in the instant case, that all employees upon municipal work are embraced in the Virginia act, and that section 20 (a) aforesaid was enacted to prevent municipalities from escaping jurisdiction of the act by letting its work to contract. The reply to this is that, as aforesaid, the act does not embrace all employees upon municipal work, but only those employed by the municipality itself and in work which it is the business of the municipality to execute. Moreover, as aforesaid also, section 20 (a), because of its terms, embraces others than municipalities and hence cannot be considered as applicable especially to municipalities. If there is a legislative purpose to bring all workmen employed in municipal work (including all work intended to be used by municipalities) within the scope of the act, regardless of whether the relation of master and servant exists between them and the municipalities, and to require municipalities to pay compensation for injuries to such workmen while so employed, even by independent contractors with the municipalities, it has not been expressed in the act, and it must be attained by further enactment by the legislature and not by judicial legislation.

The case must be affirmed.

*Affirmed.*