## Richmond

AUGUST F. KRAMER, T/A A. F. KRAMER COMPANY v. REGENIA P. KRAMER, ET EL., ADMINISTRATORS OF THE ESTATE OF GUSTAVE WILLIAM KRAMER.

October 14, 1957.

Record No. 4695.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan, Miller and Whittle, JJ.

The opinion states the case.

*Henry B. Crockett,* for the plaintiff in error.

*Charles H. Duff* and *Charles L. Wilkes* (*Jesse, Phillips, Klinge &
Kendrick; Wilkes & Artis*, on brief), for the defendants in error.

BUCHANAN, J., delivered the opinion of the court.

 The administrators of Gustave Kramer brought this action at
law against August F. Kramer, herein referred to as defendant, for
the wrongful death of their decedent. They recovered a verdict and
judgment for $25,000.00, to which we granted the defendant this
writ of error. The principal questions in the case are whether the
plaintiffs charged and proved negligence on the part of the defendant,
and whether such relationship existed between the decedent and the
defendant as that the exclusive remedy of the plaintiffs was under the
Virginia Workmen's Compensation Act, Code, 1950, §§ 65-1 ff.

The defendant filed a demurrer to the plaintiff's motion for judg-
ment on the grounds that it did not charge any negligence and showed
that the decedent assumed the risk of his employment; and also filed
a special plea alleging that the motion showed on its face that the
plaintiffs were precluded from maintaining this action at law by the
Compensation Act, which afforded them their only remedy.

The motion for judgment was in two counts. The first alleged
facts to make applicable the doctrine of *res ipsa loquitur;* and the
second alleged negligence on the part of the defendant and his em-
ployees in securing in its position a certain truss that had been erected
and which fell and fatally injured plaintiffs' decedent. The motion
for judgment also alleged that the defendant and his employees were
working under a contract with Arlington Church of Christ on the
construction of certain portions of a new church building, and that at
the same time Old Dominion Hoisting Service, decedent's employer,
was also working under a contract with the church to perform cer-
tain work on the church, and that the negligence of the defendant
which resulted in decedent's death occurred when each was about his
own work. The allegations of the motion were sufficient to charge
negligence and insufficient to show that the case was controlled by
the provisions of the Compensation Act. The action of the court in
overruling the demurrer and the plea was proper. The issues thereby
raised were afterwards presented by motions to strike the plaintiffs'
evidence and to set aside the verdict, which were overruled, and they
are the issues now to be decided on the evidence and the applicable
law.

According to the settled rule the evidence must here be considered in the light most favorable to the plaintiffs and effect given to all reasonable inferences which the jury could draw therefrom. *Southern Stevedoring Corp.* v. *Harris*, 190 Va. 628, 633, 58 S. E. 2d 302, 304.

On April 1, 1954, the defendant, August F. Kramer, entered into this contract with Arlington Church of Christ, by Wade Smith, Chairman of its Building Committee:

"For the sum of * * * $13,239.00 I will perform all labor required for rough and finish carpentry and supervision necessary to complete the work regarding the herein mentioned church building according to plans and specifications by Architect Raymond J. Mims. This price does not include any concrete forming, installation of pews, pulpit or altar furniture or any labor connected with finished grading. Progress payments to be made according to work performed."

Smith testified that the church desired to enlarge an existing structure. He was asked how the work was to be performed and replied, "by sub-contract, in its entirety by sub-contract."

In the course of construction it became necessary to erect certain trusses or arches. These were laminated wooden trusses about forty feet high and weighing two or two and one-half tons each. There were six of them to be raised and this work required the use of a crane. This was procured from Wilford W. Downs, trading as Old Dominion Hoisting Service, who was in the business of renting cranes along with crews to operate them. Who employed Hoisting Service is a controverted question to be discussed later. Downs sent his crane, weighing some thirty tons, to the job in charge of two of his own employees, who were Robinson, the operator or engineer, and the decedent Kramer (not related to the defendant), the oiler or apprentice engineer. The decedent had been in Downs' employ about three years and Downs was planning to make him an operator at the time he was killed on July 9, 1954.

The crane and the two members of its crew were rented on an hourly basis. Downs came to the job to set up the crane and see that it was ready to operate. Four of the six trusses had been erected prior to the day of the accident. On that day the fifth truss was prepared for raising by wrapping it in waterproof paper and placing around it certain ropes and rigging, all of which was done by defendant's employees. The work called for raising the trusses to an upright position. The fifth and sixth trusses, which were shorter

than the others because they were to rest on top of the wall, were being raised to a temporary position to clear the church floor. The fifth truss was lifted and placed so it leaned slightly against the masonry wall with its base resting on the main floor of the church. A rope was then attached to the top of this truss, which was in turn fastened to another rope which was tied around a wall between two doorways. The work of attaching and tying the ropes was likewise done by defendant's employees and was for the purpose of keeping this truss from falling. After this fifth truss was so placed the boom of the crane was disengaged by the defendant's employees and moved by the operator of the crane over to the sixth truss and the fifth truss was thereafter under the sole control of the defendant.

The defendant's employees then proceeded with the wrapping of the sixth truss. During that work the defendant, or one of his employees, asked the operator to raise this truss a few feet so they could put paper under the bottom. This was from fifteen to thirty minutes after the crane had been disengaged from the fifth truss. As the operator reached the crane he saw a slight movement of the fifth truss and yelled to the decedent, who was standing near the sixth truss. The decedent ran but the falling truss caught him and inflicted the injuries from which he died in a few minutes.

What caused the truss to move was not shown, but what allowed it to fall was the breaking of the rope which had been attached near its top by defendant's employees to keep it from falling. This rope, the defendant testified, appeared to have been cut by a sharp object. It had been tied by the defendant's foreman on a vertical section at the top of the truss just above a sharp angle iron which had apparently cut the rope when the weight of the truss pressed against it. This angle iron could easily be seen when the truss was lying on the floor, where it was when the rope was tied by the defendant's foreman, who testified that these were the first church arches (trusses) he had ever set up.

Without objection from the defendant the court instructed the jury that if the instrumentality which caused the decedent's death was in the control of the defendant, and the accident was such as would not ordinarily occur if reasonable care was used by the defendant, and the defendant alone had the means of discovering how and why it happened, the jury might infer that the accident was due to some negligence of the defendant. With this inference and the evidence it was for the jury to decide whether the death of the decedent was due to the negligence of the defendant. Whether the

decedent was guilty of contributory negligence was submitted to the jury and its verdict properly concluded that question. There was no evidence to justify defendant's offered instruction on assumption of risk.

The next question is whether the plaintiffs were precluded from maintaining this action at law by the provisions of the Workmen's Compensation Act, and that makes it necessary to determine the relationship of the decedent to the defendant and his work as shown by the evidence and the reasonable inferences from it. It was stipulated that Old Dominion Hoisting Service and the defendant both had workmen's compensation insurance covering their employees, and that the decedent's wife had filed with the Virginia Industrial Commission a claim for compensation against Hoisting Service.

The evidence for the defendant tended to prove that the work of raising the trusses was his business under his contract with the church; that he contracted with Hoisting Service to furnish the crane and the two men with it; that he paid Downs, owner of Hoisting Service, for the services of the men and the crane; that the men with the crane were under his direction and control and became his employees on the job; that he was the only supervisor on the job and actively engaged in directing the details of the work; that Hoisting Service was his subcontractor and not a stranger to his business; from which the defendant argues that between him and plaintiffs' decedent the relationship of employer and employee existed, and plaintiffs were therefore limited to the compensation provided by the Compensation Act and were precluded from maintaining this action by the provisions of that Act as interpreted in *Feitig* v. *Chalkley,* 185 Va. 96, 38 S. E. 2d 73, and subsequent cases.

The plaintiffs' evidence, on the other hand, tended to prove that the work of raising the trusses was not a part of the defendant's carpentry contract, but was the separate and independent business of Hoisting Service under a contract made by the church with Hoisting Service, for which Hoisting Service was paid partly by the church and partly by the defendant; and that while the defendant, as the plaintiffs stipulated, "was in charge on the spot" under his contract with the church, the defendant did not in fact have the authoritative direction and control of the crane and its crew requisite to making Hoisting Service's employees his own employees, but could and did only make suggestions as to details of the work, such as the placing

of the crane and informing Hoisting Service's employees as to when and where the trusses were to be placed.

Downs testified flatly that his contract for raising the trusses was made with the church through Smith, chairman of its building committee. Smith testified, as stated, that the building was erected entirely by subcontractors, meaning evidently that the carpentry, plumbing, masonry, electric wiring and other elements of the job were let to separate contractors. Downs said his first contact with the hoisting work was when Kramer, the defendant, called him on the telephone, stated that he was acting as agent for the church, and asked him to call Smith and make arrangements with Smith about the crane; and that after making final arrangements with Smith about the price for the crane and the men, he went to see the defendant as to where and when the crane would be set up. After the work was completed he inquired from the defendant where to send the bill and defendant told him to send it to the church. After the accident he had a letter from Smith telling him to send the bill to Kramer. The bill rendered, which was exhibited in evidence, was made out against the church, in care of Kramer. Downs testified that the church paid part of the bill and Kramer paid part. The total bill was $422.78 and Kramer introduced his paid check dated October 6, 1954, to Hoisting Service for $165 of that amount. On the back of the bill is a notation in pencil signed by Downs "Paid Oct. 21st".

The defendant's contract with the church did not in terms include raising the trusses. He did not introduce the plans and specifications of the architect. The fact that he was to supervise the whole work did not make him decedent's employer. On the question of whose was the work of raising the trusses, significant evidence, as the jury could conclude, was given by Lyons, a witness for the plaintiffs, who testified that he was a renter of cranes and that Smith, acting for the church, attempted to employ his crane and crew to raise these trusses, but he told Smith that a crane with a longer boom than any he had was needed and recommended Old Dominion Hoisting Service to Smith for the work. The defendant stated that he himself had never owned a crane and that the operation of cranes was not normally part of his business.

The plaintiffs' evidence on the question of whose was the work of raising the trusses was in all material respects in conflict with the testimony for the defendant on that question. The issue was submitted to the jury and it cannot properly be said that as a matter of

law the jury's conclusion was without adequate supporting evidence.

Likewise the court properly left it to the jury to decide whether the decedent remained the employee of Hoisting Service or became the employee of the defendant while engaged in the work of raising the trusses. The Hoisting Service was decedent's general employer. He was an oiler and apprentice engineer. His salary, social security and income tax were paid by Hoisting Service, which carried compensation insurance on him, and he continued on Hoisting Service's roll of employees while doing this work. If his work or conduct on the job was not satisfactory to the defendant, the latter could only report that to Hoisting Service, which alone had and retained the right to discharge him. While defendant, as supervisor, gave directions as to when the trusses should be raised and where they should be placed, the business of raising them was Hoisting Service's job, done by its crane, operated by its engineer and oiler, who were experts requiring no supervision in this work with which the defendant admitted he was unfamiliar. These men kept their own time and the defendant signed their work sheet.

The defendant was asked what orders he gave to the decedent and his only reply was that when the rigging on the truss was ready for hooking to the crane he asked the decedent to put the hook on and defendant then gave the signal that "we were ready to go up." Downs testified that he had full authority over the crane and the men and never relinquished that authority to the defendant.

Under the evidence as the jury could appraise it the decedent continued to be the employee of Hoisting Service and was not the loaned employee of the defendant at the time of the accident.

As was said of the plaintiff in *Tidewater Stevedoring Corp.* v. *McCormick*, 189 Va. 158, 166, 52 S. E. 2d 61, 64, the decedent's compliance with the defendant's directions "merely showed cooperation rather than subordination." "The orders he received simply pointed out to him the work" the Hoisting Service was under contract with the church to do. "He was not controlled in his method or means of work." The facts of the present case are ruled by the facts and reasoning in the *Tidewater* case and distinguish it from the case of *Coker* v. *Gunter*, 191 Va. 747, 63 S. E. 2d 15, the facts of which showed, as we said, that the plaintiff's obedience to the directions of the company to which he and a truck had been rented by the plaintiff's general employer was not mere cooperation but complete subordination.

The case now before us, therefore, made by the evidence which the jury could accept as true, is this:

Arlington Church of Christ contracted with defendant to perform the carpentry work on a structure the church wanted to build, as well as to supervise as agent for the church the work of others to whom the church would let other parts of the work. The church also contracted with Old Dominion Hoisting Service to erect the trusses in the building, and this work was not part of the carpentry work contracted to the defendant. Both the defendant and Hoisting Service were independent contractors, both as to the church and as to each other. In this relation the church was not liable for workmen's compensation, as distinguished from liability at common law, for injuries suffered by employees of the Hoisting Service or by the employees of the defendant.

Section 65-5 provides that the employees of an independent contractor are not the employees of the person who contracted with the independent contractor; and the work of building the church was not a part of the trade, business or occupation of the church so as to make the church liable for compensation under § 65-26. *Bamber* v. *City of Norfolk*, 138 Va. 26, 121 S. E. 564; *Sears, Roebuck & Co.* v. *Wallace*, 4 Cir., 172 F. 2d 802.

The question then comes down to whether an employee of one independent contractor can sue another independent contractor at common law for the negligence of such other independent contractor or his employee, both contractors being engaged in work which is to become a component part of the same structure.

In *Feitig* v. *Chalkley, supra,* we held that an injured employee could not maintain a common law action against his fellow servant for the negligence which caused his injuries done within the scope of the same business, and that compensation under the Compensation Act was his only remedy. This was so because § 11 of the original Act (Acts 1918, p. 640, now § 65-99 of the Code) provided that an employer subject to the provisions of the Act must insure compensation to his employees, and while such insurance remained in force "he or those conducting his business" were liable only in the manner provided by the Act; but "the common-law right of an injured employee to maintain an action against a party whose negligence caused his injury still remains unless the statute expressly or by necessary inference curtails or denies it." 185 Va. at 101, 38 S. E. 2d at 75. The remedies of the employer provided by the Act are exclusive

"within the field of the particular business, but the act does not extend to accidents caused by strangers to the business;" and the "other party" mentioned in what is now § 65-38, who may be sued at common law, refers exclusively to "strangers to the employment and the work". 185 Va. at 102, 104, 38 S. E. 2d at 75, 76.

In *Sykes* v. *Stone & Webster Eng. Corp.*, 186 Va. 116, 41 S. E. 2d 469, we applied the principle stated in the *Feitig* case and held that the employee of a subcontractor could not maintain a common law action against the principal contractor. There we said that § 65-5 (which was the last paragraph of § 12 as amended by Acts 1920, page 256), providing that the employees of an independent contractor are not the employees of a person who employed the independent contractor, must be reconciled with §§ 65-26 to 31 (then § 20(a), Acts 1924, p. 478). And we held that if the work which the workman is doing is not a part of "the trade, business or occupation of the owner," and the owner contracts with a contractor to do it, the contractor, but not the owner, is liable to the workman for compensation under the Act. As between the owner and such contractor, the latter is an independent contractor and his workman is not the employee of such owner under § 65-5.

We said also in that case that such liability remains on the contractor so long as any workman in the descending scale is performing work which is part of the trade, business or occupation of the contractor; "but such liability does not extend to a workman who is performing work which may have some relation to the work of the original contractor but which is not a part of the trade, business or occupation of the original contractor." 186 Va. at 122, 41 S. E. 2d at 472.

In *Rea, Administratrix* v. *Ford*, 198 Va. 712, 96 S. E. 2d 92, we dealt with the right of an employee of a principal contractor to maintain an action at law against a subcontractor. We held that in furnishing to the principal contractor a crane and crew for the purpose of hoisting certain steel trusses the defendant, Ford, was a subcontractor "engaged in an essential part of the work which the principal contractor had to do," and was not an "other party" within the meaning of § 65-38; that the subcontractor, like the principal contractor, was under the canopy of the Compensation Act and not subject to an action at law for the benefit of Rea, employee of the principal contractor, "who was engaged in the same work."

The evidence here presents a case different from the three last

above referred to. In this case the evidence which the jury could accept showed that the work being done by Old Dominion Hoisting Service, an independent contractor, was not included in the carpentry contract of the defendant, Kramer, and was not a part of the trade, business or occupation of Kramer; that the decedent, whose general employer was Hoisting Service, was performing work which had some relation to the work of the defendant, but was not part of the trade, business or occupation of the defendant, and the decedent in doing that work was not "engaged in the same work as defendant". Also the decedent, in the general employment of Hoisting Service, did not become the loaned employee of the defendant in engaging in the work which his general employer undertook as an independent contractor with the church.

Section 65-4 says that an employee as used in the Compensation Act includes every person in the service of another under any contract of hire or apprenticeship, written or implied, "except one whose employment is not in the usual course of the trade, business, occupation or profession of the employer."

Section 65-37 says that the rights and remedies of the employee granted by the Act when he and his employer have accepted its provisions exclude all other rights and remedies of the employee at common law. If the employer-employee relationship does not exist in fact, and is not created by the compensation statutes, then the compensation law is not applicable and does not control the rights and liabilities of the litigants *inter se*. If the right to maintain a common law action would otherwise exist, it continues unless expressly or by necessary implication it is denied or curtailed by the Compensation Act. *Feitig* v. *Chalkley, supra.*

In *Sears, Roebuck & Co.* v. *Wallace, supra,* the Virginia Compensation Act as interpreted by the *Bamber* and *Sykes* cases was reviewed and it was concluded that "The statute was not intended to relieve employers from liability for their own negligence which causes injury to the employees of independent contractors engaged in the performance of work for employers outside the scope of the latter's occupation." 172 F. 2d at 810.

We think that is the correct view of the Act. If the employee of one independent contractor cannot sue another independent contractor at common law, it must be because under the compensation law the plaintiff is the employee of the defendant, which would mean that this defendant was liable for compensation to the employees of

the plumbing, heating, painting, and all other contractors with whom the church contracted to do part of the work on the church building.

We hold that under the facts of this case as established by the verdict the plaintiffs were not precluded from maintaining this suit against the defendant. Objections were made to the giving and refusing of certain instructions but it was conceded in argument that the rulings were not reversible error if the verdict was warranted by the evidence and the law.

The judgment appealed from is

*Affirmed.*