**Leon Preston HOLT, Plaintiff,**

v.

**J. D. BOWIE et al., Defendants.**

**Civ. A. No. 70–C–113–A.**

United States District Court,
W. D. Virginia,
Abingdon Division.

June 1, 1972.

Robert T. Winston, Norton, Va., and Frank L. Slaughter, Bristol, Tenn., for plaintiff.

W. H. Woodward, George M. Warren, Jr., Bradley Roberts, and Dick B. Rouse, Bristol, Va., for defendants.

## SUPPLEMENTAL OPINION
### and
### JUDGMENT

DALTON, District Judge.

Defendants again move to dismiss the case by summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C., their first motion for summary judgment having been denied. Holt v. Bowie, 333 F.Supp. 843 (W.D.Va.1971). Because the facts of this case have been dealt with at length in the defendants' first motion for summary judgment, they will not be set out in this opinion.

After this court's decision in the former case, new depositions were taken by defendants' counsel. In their present motion defendants allege that evidence obtained by these depositions clearly shows that they in no way personally participated in any negligent acts of their subordinates. It is further contended that plaintiff is barred from recovery because of Virginia's Workmen's Compensation Act.

With respect to the first contention of the defendants, it does not appear that they have alleged anything that has not already been considered in their first motion for summary judgment. In fact the present allegation appears to be identical with the first contention of the defendants in their prior motion. This court in the former Holt opinion held that "[i]n order for the municipal officer to be held liable he must have participated in the negligent act; that is, he must actually direct, countenance or cooperate in the negligent act." Since the determination of each defendant's liability depended upon his individual participation in the negligent acts alleged, this court decided that this question remaining in dispute, summary judgment was inappropriate.

Although defendant Groseclose did not join in the first motion for summary judgment, nevertheless, because of the similar nature of the allegations against him by the plaintiff and his present motion, the language in the court's first denial of summary judgment would have applied equally to him had he been so joined.

While the defendants in their December 27, 1971 depositions, taken after this court's first order, unequivocally denied that they actually participated in any negligent acts, still these declarations do not settle this issue. Defendants have declined to specifically enumerate their duties and responsibilities, choosing instead to rely upon § 2–27 of the Municipal Code to so enumerate them. According to § 2–27 the " . . . utilities board shall manage the electric power and light system, the water system and the sewerage system of the city, shall construct, maintain and operate all facilities necessary thereto, shall sell and distribute electric power, light and water and shall collect the rates and charges provided for the disposal and treatment of sewage."

The plaintiff contends that the defendants had an affirmative duty to see that electric power installations were done properly within the prescribed safety codes and regulations. From questions asked by his attorney, it appears plaintiff's contention is that unless some or all of these defendants took some direct steps, i. e. random personal inspection of facilities and installations, to see that electrical equipment was

properly installed, then the defendants in effect did countenance or cooperate in the alleged negligent acts. It seems to this court that the duty of each defendant, if any, to inspect, is a question which should be left for the triers of fact and not one for summary judgment, and it is so ordered.

The defendants also contend in this motion that the plaintiff is barred from recovery because of Virginia's Workmen's Compensation Act. With respect to this allegation there are two questions which must be resolved: 1) was the plaintiff's relationship with the City of Bristol such that he would be in a legal sense an employee of that city, thus barring him from suing the city, and 2) if such a legal relationship between the city and the plaintiff does exist, does the immunity from civil suit against the city pass down to the member of the utility board, where their employer, the utility board itself, is a separate and distinct division of the city, operating in a proprietary capacity. This latter point involves the question of whether or not the utility board would be considered a stranger to the work on the bus garage being built for the city.

The defendants place great reliance on three cases, Anderson v. Thorington Constr. Co., 201 Va. 266, 110 S.E.2d 396 (1959), appeal dismissed, 363 U.S. 719, 80 S.Ct. 1596, 4 L.Ed.2d 1521 (1960); Williams v. E. T. Gresham Co., 201 Va. 457, 111 S.E.2d 498 (1959); and Floyd v. Mitchell, 203 Va. 269, 123 S.E.2d 369 (1962). While defendants have ably argued their points, this court is bound by the *Erie* doctrine to follow the state law. An analysis of Virginia law reveals that the plaintiff would not be barred because of the Workmen's Compensation Act from suing the city. This being the case, the second question presented is rendered moot.

The controversial statute in the present case is § 65.1–29 of the 1950 Virginia Code. It states:

When any person (in this section . . . referred to as 'owner') under-takes to perform or execute any work which is a part of his trade, business or occupation and contracts with any other person (in this section . . . referred to as 'subcontractor') for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay any workman employed in the work any compensation under this Act which he would have been liable to pay if the workman had been immediately employed by him.

The case of Bamber v. City of Norfolk, 138 Va. 26, 121 S.E. 564 (1924) is on point with the present case. In that case the city operated a waterworks and contracted with an independent contractor to repair a standpipe which was a necessary part of the waterwork's operation. The plaintiff's husband was employed by the contractor on the job when he was killed. The question before the court in that case was whether the city was liable under Workmen's Compensation as a principal contractor under § 20(a) [now § 65.1–29]. The Virginia court stated that the construction of a standpipe was a necessary incident to the proper maintenance of the water system when it construed the words "[w]here any person . . . undertakes to execute any work, which is a part of his trade, business or occupation . . . .". The court queried:

Does this mean any person, who, as owner, undertakes to have any work executed for him by another, not as an employee, but as an independent contractor, which work is not yet 'a part of,' but which, when completed, is intended to be used in the owner's trade, business or occupation?

On this point the court held that if such were the meaning, then § 20(a) would include all owners where the finished product would be used in their trade, business, or occupation.

The determination of liability, the court held, is not based on the future use to which any particular project will

be put. Therefore the mere fact that the city waterworks would use the facility after completion did not make the city liable as an employer of the deceased. To be liable the court stated four people must be present:

(1) An owner or other person who is having the work-executed for himself; (2) an independent contractor who has undertaken to execute the work for the person first mentioned; (3) a subcontractor, between whom and the independent contractor . . . there is a contract for the execution by or under the subcontractor of the whole or some part of the work; and (4) a workman 'employed in the work.'

The decision in *Bamber* was more fully developed in Sykes v. Stone & Webster Engineering Corp., 186 Va. 116, 41 S.E.2d 469 (1947). In this case the court stated that an owner would be liable to workmen of the contractor or subcontractor if these people did work which the owner *ordinarily* performed in his trade, business, or occupation.

■ Under the holding in both *Bamber* and *Sykes*, therefore, liability will only be imposed on an owner if an independent contractor is doing work which the owner generally does perform. This statement appears to be the test of liability, and not the future use to which a project is to be put. Compare Sears, Roebuck & Co. v. Wallace, 172 F.2d 802 (4th Cir. 1949); Kramer v. Kramer, 199 Va. 409, 100 S.E.2d 37 (1957); Board of Supervisors of Amherst County v. Boaz, 176 Va. 126, 10 S.E.2d 498 (1940) *with* Floyd v. Mitchell, 203 Va. 269, 123 S.E.2d 369 (1962). In these four cases the person sought to be held liable asserted the Workmen's Compensation Act as a defense. In the first three cases this defense did not apply because the plaintiffs in each case had not taken over an operation which the defendant *ordinarily* performed or would be expected to perform when compared with other similar businesses or organizations and their operations. The court in *Kramer* held that § 65.1–5 must be reconciled with § 65.1–29. § 65.1–5 states that the employees of an independent contractor are not the employees of the person who employed the contractor. The Virginia court, therefore, drew a distinction between an owner or employer who contracts out work, which he himself generally does perform or which in the ordinary course of his particular trade or business companies similarly situated actually do or could be expected to perform, and an owner or employer who contracts out work which he does not or never could be expected to perform. In the first situation liability of the owner under the Workmen's Compensation Act would attach; in the second case it would not. Compare Floyd v. Mitchell, 203 Va. 269, 123 S.E.2d 369 (1962); Williams v. E. T. Gresham Co., 201 Va. 457, 111 S.E.2d 498 (1959); Anderson v. Thorington Constr. Co., 201 Va. 266, 110 S.E.2d 396 (1959), appeal dismissed, 363 U.S. 719, 80 S.Ct. 1596, 4 L.Ed.2d 1521 (1960); Sykes v. Stone & Webster Engineering Corp., 186 Va. 116, 41 S.E. 2d 469 (1947); Craig v. Doyle, 179 Va. 526, 19 S.E.2d 675 (1942) with Sears, Roebuck & Co. v. Wallace, 172 F.2d 802 (4th Cir. 1949); Kramer v. Kramer, 199 Va. 409, 100 S.E.2d 37 (1957); Tidewater Stevedoring Corp. v. McCormick, 189 Va. 158, 52 S.E.2d 61 (1949); Board of Supervisors of Amherst County v. Boaz, 176 Va. 126, 10 S.E.2d 498 (1940); City of Portsmouth v. Daniels, 157 Va. 614, 162 S.E. 324 (1932); Bamber v. City of Norfolk, 138 Va. 26, 121 S.E. 564 (1924).

■ The mere fact that a city, county, or corporation could have performed the function if it had so desired is of little consequence with the Virginia Supreme Court. See Sears, Roebuck & Co. v. Wallace, 172 F.2d 802 (4th Cir. 1949); City of Portsmouth v. Daniels, 157 Va. 614, 162 S.E. 324 (1932); Bamber v. City of Norfolk, 138 Va. 26, 121 S.E. 564 (1924). Thus in the present case, the fact that the city could have built the bus garage had it so desired is irrelevant to the question under consideration, nor under *Daniels* and *Bamber*

does it make any difference that the garage was a necessary element of the city's obligation to provide transportation to its residents. The City of Bristol might be in the transportation business, but it is not in the building business.

The defendant places great emphasis on Anderson v. Thorington Constr. Co., 201 Va. 266, 110 S.E.2d 396 (1959) and Williams v. E. T. Gresham Co., 201 Va. 457, 111 S.E.2d 498 (1959). Each of these cases involved political subdivisions created by the General Assembly. Each subdivision, however, one a highway authority and the other a type of port authority, had a very limited and specific task. The highway authority was required to build and maintain the Richmond-Petersburg Expressway; the port authority operated a ferry between two points. Had these two subdivisions not built the road or maintained the ferry, then the very reason for their creation would no longer exist.

The Virginia court on the other hand distinguishes this limited type of political subdivision with a municipal corporation which has many functions. Municipal corporations can determine for themselves precisely what the corporation itself will do, particularly with respect to proprietary functions. If a municipal corporation choses to engage in operating a waterworks, but does not desire to build or repair it, the court in *Daniels* and *Bamber* has held that any repair, maintenance, or construction are not part of the trade, business, or occupation of the municipal corporation. Therefore when the City of Bristol decided to operate a bus line for its residents, it did not make a part of its trade, business or occupation any necessary and incidental construction work. As the court stated in the *Anderson* case:

> . . . the expressed exclusion of the applicability of the Act to political subdivisions should be considered in the light of the particular entities which were there involved, that is, a municipal corporation in the Bamber

and the Daniels cases and a county board of supervisors in the Boaz case. To each of these the State has delegated certain functions of local government. In none of these cases were we concerned with the applicability of the Act to a political subdivision such as the Authority which was created for the limited public purpose of constructing, maintaining and operating a turnpike.

Because the Virginia court has drawn this distinction, this federal court is bound by the law to follow it. The motion for summary judgment asking for dismissal of this case should be denied, and it is so ordered.

The court is of the opinion that this decision and order entered herein involve a controlling question of law as to which there is a substantial ground for difference of opinion, and that an immediate appeal from the decision and order may materially advance the ultimate determination of this litigation, pursuant to the provisions of Title 28 U.S.C. sec. 1292(b). An appeal is granted.