## CIRCUIT COURT OF CITY OF RICHMOND

Fred S. Harrison

    v.

City of Richmond et al.


F. Joseph Harrison

    v.

City of Richmond et al.

March 22, 1982

Cases No. LE-1541 and LE-1542

By JUDGE WILLARD I. WALKER

    This matter is before the court on defendants' jurisdictional plea, pursuant to Va. Code Ann. § 65.1-29 and § 65.1-40 (Repl. Vol. 1980), asserting that plaintiffs' exclusive remedy is workmen's compensation. Based on the findings outlined below, I conclude that the plea is valid.

    The facts are as follows: On July 7, 1981, plaintiffs, Fred S. Harrison and F. Joseph Harrison, were injured in an explosion occurring on the premises of Philip Morris's stemmery plant in Richmond, Virginia. At the time of the explosion the plaintiffs and Edward Young Liggan, Jr., an employee of Philip Morris, were repairing a condensate line located in a pit outside of the stemmery plant. Plaintiffs are the employees of R. S. Harritan, a mechanical contractor;

Fred S. Harrison being classified as a steamfitter/pipefitter and F. Joseph Harrison as a helper. Mr. Alvin F. Klement, an employee of Philip Morris in charge of their maintenance department, called George Bolton, an employee of R. S. Harritan, and asked him to send over two pipefitters. (T. 10) The stemmery was in a shut-down period at this time and Mr. Klement had decided that additional workers were required to complete the necessary maintenance work. While at Philip Morris plaintiff Fred.S. Harrison performed a variety of jobs: welded, replaced a steam-line, ran a new steamline, replaced sprinklers, did tubing work, and was in the process of repairing the condensate line when the explosion occurred and plaintiffs were injured. Generally, plaintiffs did the same type of work as Philip Morris's employees, and this work involved maintenance on all kinds of Philip Morris's equipment.

Defendant Philip Morris claims that it is the "statutory employer" of plaintiffs. (Va. Code Ann. § 65.1-29 (Repl. Vol. 1980)). Under this theory, plaintiffs would have the right to collect compensation from Philip Morris as a statutory employer, and consequently, their right to sue at law would be barred by § 65.1-40.

Va. Code Ann. § 65.1-29 sets forth three requirements that must be met in order for Philip Morris to qualify as a "statutory employer" First, the trade, business, or occupation of an "owner" must be established. Second, the owner must have contracted with another party, the "subcontractor," to do all or part of the owner's work. Third, the subcontractor must have been performing that work previously established as that of the owner. Once these criteria have been established, any "workman employed in the work" is entitled to compensation.

Philip Morris is the "owner" in this case at bar. Though the term is not defined in the statute, it is clear that Philip Morris is the pinnacle of any statutory umbrella because it initiated the alleged statutory family by contracting with R. S. Harritan.

Since the contract between Philip Morris and R. S. Harritan is conceded, the only questions before the court are what was the normal work, trade or occupation of Philip Morris, and were plaintiffs "involved" in that work, trade or occupation?

Philip Morris is in the business of manufacturing cigarettes. The stemmery is one of the many Philip Morris plants involved in this process. The stemmery receives the green tobacco off the markets, processes and blends it so that it can be aged before being made into cigarettes or other products. (T. 4) The stemmery employs approximately two hundred fifty workers, of which about twenty-one are assigned to the maintenance department. (T. 22) The maintenance department is charged with maintaining the equipment in the building to ensure efficient operations. Plaintiffs were working with an employee of the maintenance department (T. 39-41) under the direction of Mr. Klement (T. 64, 65) at the time of the explosion. The specific question at issue here is whether or not the mainte- nance work being done by plaintiffs at the time of the explosion was part of the normal work, trade or occupation of Philip Morris.

Plaintiffs rely heavily on a recent line of Virginia Supreme Court cases, including Sun Oil Company v. Lawrence, 213 Va. 596 (1973), Shell Oil Company v. Leftwich, 212 Va. 715 (1972) and Bassett Furniture Indus., Inc. v. McReynolds, 216 Va. 897 (1976), which outline the "test" to be used when determining whether an employer/employee relationship is statutorily created by Va. Code Ann. § 65.1-29. The court in Shell Oil, quoting Professor Arthur Larson, states:

> [T]he test is not one of whether the subcontractor's activity is useful, necessary, or even absolutely indispensable to the statutory employer's business, since, after all, this could be said of practically any repair, construction or transportation service. The test (except in cases where the work is obviously a subcontracted fraction of a main contract) is whether this indispensable

activity is, in that business, <u>normally</u> carried on through employees rather than independent contractors. <u>Shell Oil</u> at 722.

The maintenance work at the Philip Morris stemmery is normally performed by Philip Morris employees. Plaintiffs, however, attempt to differentiate between pipefitting work and maintenance work. They contend that plaintiffs were involved in performing pipefitting work which is not part of the work normally performed by the maintenance department at Philip Morris. Emphasis is placed on the fact that all pipefitting work done at the stemmery prior to 1976 was done by independent contractors, and that only two of a total of twenty-one maintenance workers are qualified pipefitters. (T. 22,23)

In support of this contention plaintiffs rely on the guidelines set forth by the court in <u>Bassett</u>: Whether the work is a part of the owner's trade, business or occupation "depends upon the facts and circumstances in each case, and for that reason the question does not readily yield to categorical or absolute standard. . . . Frequency and regularity of performance are factors to be considered in determining whether work is 'normally carried on through employees.' Mere capacity to perform, standing alone, is not determinative. Nor is performance which is a <u>de minimis</u> part of the total business operation." <u>Bassett</u> at 902 (cites omitted). Plaintiffs reliance on <u>Bassett</u> is incorrect. This is not a <u>Bassett</u> case. The Supreme Court in <u>Bassett</u> continues: "In the manufacturing industry, construction work is typically outside the custom of the trade, and manufacturers who use their employees for such work generally do so only infrequently and irregularly." In this case we are not considering a furniture company whose maintenance employees performed construction work. We are considering a manufacturing company which hired plaintiffs to assist its <u>own</u> maintenance employees in performing maintenance work which it regularly performs. Judge Dalton in <u>Holt</u> v. <u>Bowie</u>, 343 F. Supp. 962 (1972) made the following significant statement: "The Virginia court, therefore, drew a distinction between an

owner or employer who contracts out work, which he himself generally <u>does</u> perform or which in the ordinary course of his particular trade or business, companies similarly situated actually do or could be expected to perform, and an owner or employer who contracts out work which he does not or never could be expected to perform. In the first situation liability of the owner under the Workman's Compensation Act would attach; in the second case it would not." <u>Holt</u> at 965 (cites omitted). Not only does Philip Morris maintain a full-time maintenance department including two pipefitters who are capable of and regularly perform maintenance work, it is within the ordinary course of the manufacturing business to have maintenance departments. (T.32)

The maintenance department does not, as in <u>Sun Oil</u>, perform a <u>de minimis</u> part of the total business operation. Va. Code Ann. § 65.1-29 refers to ". . .the execution or performance by or under such subcontract of the whole or <u>any part</u> of the work undertaken by such owner. . . ." Philip Morris as a part of its normal work, trade and occupation does maintenance work. Plaintiffs at the time of the accident were performing maintenance work. The fact that they were classified as steamfitter/pipefitter and helper is not a determinative factor, and therefore I conclude that plaintiffs were involved in the performance of maintenance work that is a part of the normal work, trade and occupation of Philip Morris.

For a remarkably similar case on the facts and law, counsel are referred to <u>F. Robert Loftis, Adm'r. of Estate of Francis J. Loftis, deceased</u> v. <u>Chesapeake Corporation of Virginia</u>, Circuit Court of the City of Richmond, Division I (formerly Law & Equity Court of the City of Richmond), letter decision dated December 20, 1972. A well reasoned written opinion was rendered in that case by the Honorable A. Christian Compton, formerly a judge of this court.

Neither counsel in this case have argued that plaintiffs were loaned employees of Philip Morris. That analysis is appropriate under the facts of this case. Philip Morris and R. S. Harritan had an oral con-

tract with regard to plaintiffs' employment. Philip Morris did not advise Harritan as to what jobs plaintiffs would perform once they reached Philip Morris. (T. 11) Philip Morris had control over and determined what plaintiffs would do at any given time. (T. 9, 11, 12) This power of control is the most significant factor when determining the question of loaned employee status. Stover v. Ratliff, 221 Va. 509 (1980), Philips v. Brinkley, 194 Va. 62 (1952), Crowder v. Haymaker, 164 Va. 77 (1935), Baker v. Nussman, 152 Va. 293 (1929). As "loaned employees" of Philip Morris plaintiffs' right to sue at law would be barred.

The workman's compensation plea is sustained.