# Richmond

## Henry Harold Williams v. E. T. Gresham Co., Inc.

November 30, 1959.

Record No. 4994.

Present, All the Justices.

The opinion states the case.

*Joseph A. Gawrys* and *Hugh S. Meredith* (*Vandeventer, Black & Meredith*, on brief), for the plaintiff in error.

*James A. Howard* and *Berryman Green, IV* (*Breeden, Howard & MacMillan*, on brief), for the defendant in error.

Snead, J., delivered the opinion of the court.

On April 17, 1958, Henry Harold Williams, an employee of Chesapeake Bay Ferry District, instituted an action at law against E. T. Gresham Company, Inc. for damages in the sum of $100,000 arising from injuries he sustained on April 23, 1957, when the follow block

of the corporation's pile driving apparatus fell and struck him while it was engaged in driving piles at Little Creek for Chesapeake Bay Ferry District, hereinafter referred to as Ferry District.

The litigants will be referred to at times as plaintiff and defendant in accordance with their respective positions in the court below.

Williams alleged defendant was negligent in furnishing Ferry District "defective or unsafe equipment" and that defendant's employees operated the equipment in a negligent manner. Defendant filed responsive pleadings denying primary negligence on its part and asserted plaintiff was guilty of contributory negligence. In addition, defendant interposed a special plea alleging that plaintiff's action was barred by virtue of the provisions of the Virginia Workmen's Compensation Act. (Title 65, Code 1950). The trial court overruled defendant's motion to strike at the conclusion of plaintiff's evidence and also at the conclusion of all the evidence. The motions were made on the grounds that no negligence had been shown on the part of defendant or its employees and that the evidence conclusively established that plaintiff's alleged cause of action was barred by the provisions of the Workmen's Compensation Act. The jury returned a verdict for defendant, and plaintiff moved to set it aside as being contrary to the law and the evidence. This motion was likewise overruled and judgment was entered on the verdict. We granted plaintiff a writ of error.

Plaintiff filed a number of assignments of error which challenge the sufficiency of the evidence to sustain the verdict, the court's ruling on instructions and admissibility of certain evidence. It is unnecessary that they be considered because we have concluded that the case should be disposed of on defendant's assignment of cross-error that plaintiff's exclusive remedy was under the Workmen's Compensation Act and that the present common law action cannot be maintained.

Chesapeake Bay Ferry District and Chesapeake Bay Ferry Commission, the governing board of the Ferry District, were created by Chapter 693 of the 1954 Acts of Assembly, approved April 7, 1954. In it the Ferry District was designated a political subdivision of the Commonwealth. The Commission was authorized and empowered, among other things, to acquire, construct, operate and maintain a project to provide vehicular and passenger ferry service between the city of Hampton and the county of Northampton, between the counties of Princess Anne and Northampton, and between certain

other points within the boundaries of the district where such ferry service would be a connecting link in the State Highway System, and consisting of such vessels, approaches, termini, buildings and other equipment as might be deemed necessary by the Commission for the operation of the project. The Act also provided for the issuance of ferry revenue bonds, payable solely from earnings, and provided for the collection of tolls for the payment of such bonds and for maintenance, operation and repairs of the project.

Pursuant to authority under the Act, Ferry District was operating prior to and on April 23, 1957, a ferry service across the Chesapeake Bay between Little Creek and Kiptopeake. Ferry District had a maintenance department consisting of about twelve men to care for ordinary and general upkeep of its properties, equipment and facilities. Kenneth Barber was supervisor of the maintenance crew and George Daniels, port captain, worked in conjunction with him in overseeing repairs to the dock facilities. According to Barber, maintenance of the slipways to the shore was a responsibility of his department, and when a cluster of piles became loosened or some replacements were needed due to decay, defendant was called in with its crane and crew and related equipment to assist in the work. When major repairs were necessary a larger contractor was engaged to perform the work, which was done without any assistance from Ferry District's employees.

Shortly before April 23, 1957, Captain Daniels called William N. Gresham, superintendent and dispatcher for defendant, and requested that he send a crane to Little Creek to do some work for Ferry District, which involved dredging, raising a sunken paint barge and some pile driving. Willis Powell, defendant's superintendent of cranes, went to the job site and made a survey of the work to be done in order to furnish proper equipment for the job. As a result crane No. 14, its operator, James E. Chappell, Jr., and its oiler, David B. Bjork, as well as pile driving equipment, were dispatched to Little Creek. The crew were not instructed by defendant what to do, but were told that they would receive instructions from Ferry District's employees. According to Gresham, defendant charged Ferry District approximately $18 per hour for the use of the crane and $25 a day for the use of pile driving equipment. Wages for the operator and the oiler were included in the charge for the use of the crane and they were paid by defendant.

Barber assigned plaintiff and four other Ferry District maintenance

employees to fill in and replace defective piles in a cluster and work along with the "rig". Plaintiff, a carpenter first class, who had been in the employ of Ferry District since its creation, was selected because he knew the work and had assisted in it on prior occasions. Although the direct supervision of the job was under Barber and Daniels who did not remain at the job site, plaintiff did exercise some supervision of the work. Ferry District furnished the piles and other material for the repairs. Its employees "topped" the piling to fit the follow block, which serves as a cap to protect the pile from the hammer blows, selected the piles to be used and designated where they were to be placed. They attached the hoisting cable of the crane to the pile, climbed the leads of the pile driving equipment in order to guide the pile and to connect and disconnect the follow block from the hammer when necessary and gave signals to the crane operator to manipulate the pile into place.

Ferry District has never owned a crane and alone has never attempted to drive piles. Equipment has always been secured elsewhere for pile driving. The actual operation of the crane in question was under control of Chappell and Bjork. Defendant selected the equipment, hired and trained the personnel to operate it. As Captain Daniels expressed it, the crane crew and the maintenance employees of Ferry District were "working together" on the job.

Plaintiff's right hand was severely injured during the operation of the equipment when the follow block became unhooked from the hammer, fell and struck him.

It was stipulated that Ferry District, its employees, E. T. Gresham Company, Inc. and its employees had all accepted and were subjected to the provisions of the Workmen's Compensation Act on the date of the accident; that Williams was awarded and received compensation while he was totally disabled and later received a specific award for permanent disability of his hand, and that no appeal was taken from these awards made by the Industrial Commission.

The primary question is whether plaintiff's cause of action was barred by the provisions of the Workmen's Compensation Act.

Pertinent sections of Code 1950 relating to the Act follow:

Section 65-37. "The rights and remedies herein granted to an employee when he and his employer have accepted the provisions of this Act respectively to pay and accept compensation on account of personal injury or death by accident shall exclude all other rights and remedies of such employee, his personal representative, parents, de-

pendents or next of kin, at common law or otherwise, on account of such injury, loss of service or death."

Section 65-38. "The making of a lawful claim against an employer for compensation under this Act for the injury or death of his employee shall operate as an assignment to the employer of any right to recover damages which the injured employee or his personal representative or other person may have against any *other party* for such injury or death, and such employer shall be subrogated to any such right and may enforce, in his own name or in the name of the injured employee or his personal representative, the legal liability of such *other party*. * * * Any amount collected by the employer under the provisions of this section in excess of the amount paid by the employer or for which he is liable shall be held by the employer for the benefit of the injured employee or other person entitled thereto, less such amounts as are paid by the employer for reasonable expenses and attorney's fees. * * *" (Italics supplied.)

Section 65-99. "Every employer subject to the compensation provisions of this Act shall insure the payment of compensation to his employees in the manner hereinafter provided. While such insurance remains in force he or those conducting his business shall only be liable to an employee for personal injury or death by accident to the extent and in the manner herein specified."

Section 65-26. "When any person (in this section and §§ 65-28 and 65-29 referred to as 'owner') undertakes to perform or execute any work which is a part of his trade, business or occupation and contracts with any other person (in this section and §§ 65-28 to 65-31 referred to as 'sub-contractor') for the execution or performance by or under such sub-contractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any workman employed in the work any compensation under this Act which he would have been liable to pay if the workman had been immediately employed by him."

*Rea, Administratrix* v. *Ford,* 198 Va. 712, 96 S. E. 2d 92 bears some similarity to the present case. There John W. Daniel & Company was the principal contractor for the construction of a high school in the City of South Norfolk. Daniel rented from Ford a crane with its operator and helper on an hourly basis for the purpose of hoisting steel trusses to be used in the construction as Daniel did not possess the necessary equipment. While a truss was being lifted and placed in position, Rea, Daniel's employee, was standing

on one end of it and a fellow employee was on the other end. Their duty was to bolt the respective ends of the truss to the upright columns after it was placed in proper position. During the operation one end of the truss struck a column, the sling broke, the truss and Rea fell to the ground and Rea was killed.

The crane and crew were placed under the direction and control of Arthur H. Jurgensen, Daniel's superintendent. Jurgensen and Rea, who worked under him, designated what truss was to be raised, directed when it was to be raised, and where it should be placed. The crane crew was on Ford's payroll, but he gave them no instructions as to how, when and where they should work.

It was stipulated that decedent's widow asserted her claim for compensation under the Workmen's Compensation Act against Daniel and its insurance carrier, and that the Industrial Commission entered an award in her favor.

Plaintiff alleged that decedent's death was caused by the negligence of Ford because the crane and equipment furnished by him were defective and that his employee had operated it in a negligent manner. This allegation is similar to the one in the instant case. At the conclusion of plaintiff's evidence the trial court struck the evidence on the ground that "the operation and the hazards incident thereto by Daniel and Ford were within the purview of the Workmen's Compensation Act," and that plaintiff's exclusive remedy was under it. On Appeal we affirmed the judgment of the lower court and said:

"* * * Ford, the defendant, was no stranger to the business of Daniel, the principal contractor. On the contrary, in furnishing the equipment and crew for the purpose of erecting the steel structure Ford was a subcontractor engaged in an essential part of the work which the principal contractor had to do. Thus he was not an 'other party' within the meaning of Code, § 65-38. Like the principal contractor, Ford was under the canopy of the Workmen's Compensation Act and not subject to an action at law for damages for injury to or death of Rea who was engaged in the same work. Code, § 65-37, *supra*." 198 Va., at page 717, 96 S. E. 2d, at page 96.

In the very recent case of *Anderson* v. *Thorington Construction Company*, 201 Va. 266, 110 S. E. 2d 396, decided on October 12, 1959, Anderson, who was employed as a project engineer for Parsons, Brinckerhoff, Hall & MacDonald, consulting engineers for the Richmond-Petersburg Turnpike Authority, filed an action at law against Thorington to recover damages for personal injuries alleged to have

been caused by the negligence of Thorington's servants during construction of a portion of the turnpike which Thorington and two other contractors combined had contracted to do for the Authority. Thorington filed a special plea asserting that the trial court was without jurisdiction to entertain the action as the matter was within the exclusive jurisdiction of the Industrial Commission. Evidence was presented on the issues raised by the plea, and the court entered final judgment sustaining the plea and dismissing the action, which judgment we affirmed.

Under the Act creating the Authority (1954 Acts of Assembly, ch. 705), the Authority was designated "a political subdivision of the Commonwealth." Among other things, it was authorized and empowered to determine the location of the project, to acquire title to rights of way by purchase or under its power of eminent domain, and "to construct, maintain, repair and operate the turnpike project." The Authority had no force of employees to perform the necessary construction work so it awarded various sections of the job to a number of contractors. Anderson was injured while supervising on behalf of his employer, the Engineers, the work being done by Thorington.

Both the Engineers and Thorington were independent contractors, and they were required to carry and did carry workmen's compensation insurance for their respective employees. The Authority also carried such insurance. Anderson was paid compensation under the Act by the Engineers' insurance carrier.

The principal question involved was "whether under the relationship of the parties and the circumstances stated, the plaintiff, an employee of the Engineers, one independent contractor on the project, may maintain an action at law against Thorington, another independent contractor on the project, to recover damages for his injuries caused by the negligence of the servants of the defendant independent contractor, or whether the plaintiff's right to recover workmen's compensation benefits is his exclusive remedy."

Mr. Chief Justice Eggleston, speaking for the court, discussed the applicable statutes and cases relating to the question, and reference is made to the opinion for further discussion of it. There it was held:

"Since both Thorington and the Engineers were engaged in the trade, business or occupation of the Authority, neither was a stranger to the employment and the work. Both, as well as the Authority, were under the canopy of the Workmen's Compensation Act. Consequently, Thorington was not an 'other party' within the meaning

of Section 65-38 and subject to an action at law for damages for the personal injuries to the Engineers' employee, Anderson. *Sykes* v. *Stone & Webster Engineering Corp., supra; Rea* v. *Ford, supra.*" 201 Va., at page 272.

Plaintiff contends that Ferry District was created for the purposes of providing vehicular and passenger ferry service within the district, and that maintenance of its facilities is not a part of its trade, business or occupation within the meaning of the Act. He cites *Sears, Roebuck & Co.* v. *Wallace,* (4 Cir.,) 172 F. 2d 802, in support of his contention. There Sears was the lessee and occupant of a building in Norfolk which it used for storage. It contracted with a general contractor to make alterations to the building which included closing all the windows with brick. This portion of the work was let by the general contractor to a subcontractor who hired plaintiff as foreman on the job. Plaintiff was injured on the premises when a defective elevator door closed and injured his hand. He instituted an action at law against Sears for negligence. One of Sears' defenses was that recovery was barred by the provisions of the Workmen's Compensation Act. The court observed that the nature of the work itself is the decisive factor; that "defendant was in the business of selling merchandise and needed a storage warehouse to facilitate that activity; but it was not in the construction business, and when extensive alterations of the warehouse were deemed desirable, the defendant did not undertake to perform the work itself but employed a construction company to execute it." The court held that Sears did not come within the provisions of the Act and remained liable for its torts.

Plaintiff also cites *Kramer* v. *Kramer, et al., Adm'rs,* 199 Va. 409, 100 S. E. 2d 37. Two independent contractors were engaged in constructing a church. An employee of one of the independent contractors was killed and his personal representative instituted action against the other independent contractor for wrongful death. We held that the action could be maintained because the work of building a church was not a part of the trade, business or occupation of the church so as to make it liable for compensation benefits under § 65-26, *supra.*

The facts in the *Sears* case and in the *Kramer* case are dissimilar to those in the present case, and the decisions are not controlling here. In the case at bar, Ferry District Commission was authorized and empowered by the Act creating it, among other things, to acquire, construct, operate, and maintain a project to provide vehicular and

passenger ferry service within the district; "to acquire full information to enable it to establish, construct, maintain and operate the project," which included approaches and termini, and to enter into contracts necessary or incidental to the performance of its duties. The Commission's powers and responsibilities are clear. When repairs were being made to the ferry slip and the unfortunate accident occurred, Ferry District was excuting essential duties imposed upon it.

There is no material conflict in the evidence and it conclusively shows that defendant was engaged in work, at the time of plaintiff's injury, which was a part of the trade, business or occupation of the owner, Ferry District, and that defendant was not a stranger to the work. Both defendant and Ferry District were under the canopy of the Workmen's Compensation Act and not subject to an action at law by plaintiff, Ferry District's employee, for damages on account of injuries he received while engaged in the same work. § 65-37, *supra*. Therefore, defendant was not an "other party" within the purview of § 65-38, *supra*, and amenable to such an action at law.

Plaintiff argues that since Ferry District was designated a political subdivision of the Commonwealth by the Act creating it, Section 65-26, *supra*, cannot be applied. We find no merit to this contention. Similar argument was advanced, but rejected in *Anderson* v. *Thorington Construction Company*, *supra*.

Our conclusion is that the trial court erred in not striking plaintiff's evidence at the conclusion of all the evidence and entering final judgment for defendant.

For the reasons stated the judgment appealed from is affirmed.

*Affirmed.*