John S. BEST

v.

**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY,**
**Appellant,**

**Westinghouse Electric Corporation.**

**No. 85–6214.**

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 9, 1987.

Decided July 10, 1987.

Robert J. Kniaz, with whom Sara E. Lister, Carol A. Sigmond, Gerard J. Stief and Janet B. Rubin, Washington, D.C., were on the brief, for appellant.

Marc Fiedler of the Bar of the Supreme Judicial Court of Com. of Massachusetts, pro hac vice by special leave of Court, with whom Roger C. Johnson, Joseph H. Koonz, Jr. and Carolyn McKenney, Washington, D.C., were on the brief, for appellee.

Before MIKVA, EDWARDS and WILLIAMS, Circuit Judges.

Opinion for the Court filed by Circuit Judge WILLIAMS.

Concurring statement filed by Circuit Judge MIKVA.

WILLIAMS, Circuit Judge:

The Washington Metropolitan Area Transit Authority ("WMATA") appeals a judgment awarding damages to John S. Best, an employee of Westinghouse Electric Corporation, for injuries he sustained while replacing a broken light bulb on the side of a WMATA escalator. We hold that WMATA is immune from suit as Best's "statutory employer" under Virginia law, and therefore find it unnecessary to reach the other grounds of appeal.

## I. BACKGROUND

WMATA is a creature of an interstate compact among Maryland, Virginia and the District of Columbia, Pub.L. No. 89–774, 80 Stat. 1324 (1966), and is charged with the operation and maintenance of a mass transit system. Pursuant to that mandate WMATA engaged Westinghouse to maintain and repair the escalators in WMATA's metrorail stations. The injuries in question here occurred on August 18, 1983, when Kevin Morse, a Westinghouse mechanic, and Best, his assistant, were changing light bulbs on the barrier between an escalator and stairway at the Clarendon Station in Virginia.

Noticing that several of the light bulbs were broken, Best and Morse took various steps to cut off power to the relevant outlets. As a handrail obstructed efforts to reach one of the broken bulbs with a tool, Best used his bare hand. In doing so, he either received an electrical shock or stabbed himself on broken glass. He reflexively pulled his hand out of the fixture, lacerating his wrist on the fixture's sharp edge.

Best sued WMATA in the United States District Court for the District of Columbia,[1] alleging that WMATA's negligent la-

---

1. *See* WMATA Compact § 81, 80 Stat. 1350 ("[t]he United States District Courts shall have original jurisdiction, concurrent with the Courts of Maryland and Virginia, of all actions brought

... against the Authority"); *see also Osborn v. Bank of the United States,* 22 U.S. (9 Wheat.) 738, 6 L.Ed. 204 (1824); Mishkin, *The Federal*

beling of the electrical panel and placement of the handrail in front of the light fixture proximately caused his accident. A jury awarded Best $373,000. WMATA now appeals.

## II.  WMATA's
### STATUTORY-EMPLOYER STATUS

WMATA contends that the Virginia Workers' Compensation Act, VA.CODE ANN. §§ 65.1–1 to 65.1–163 (Repl. Vol. 1980 & Supp.1986), bars this suit because WMATA was Best's statutory employer.[2] The Act declares that

> [n]othing in this Act contained shall be construed to make, for the purposes of this Act, the employees of an independent contractor the employees of the person or corporation employing or contracting with such independent contractor.

VA.CODE ANN. § 65.1–5 (Repl.Vol.1980). Notwithstanding that seemingly categorical statement, the Act treats an "owner" or general "contractor" as a "statutory employer" of its subcontractor's employees in certain circumstances:

> When any [owner] undertakes to perform or execute any work which is a part of his trade, business or occupation and contracts with any [subcontractor] for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any workman employed in the work any compensation under this Act which he would have been liable to pay if the workman had been immediately employed by him.

*Id.* § 65.1–29; *see also id.* § 65.1–30 (parallel provision relating to general contractor). In return for the statutory employer's duty to provide workers' compensation coverage to employees of its subcontractor, the Act

immunizes it from suit for covered injuries. *Id.* § 65.1–40; *see also id.* §§ 65.1–23, 65.1–103. Conversely, if an owner or general contractor does not have statutory-employer status, it is an "other party" and is amenable to suit. *Id.* § 65.1–41.[3]

■ Sections 65.1–5 and 65.1–29, read together, hinge statutory-employer status on whether the subcontractor performs "part of the owner's trade, business or occupation." *See Henderson v. Central Telephone Co.,* 233 Va. 377, ___–___, 355 S.E.2d 596, 598–99 (1987); *Smith v. Horn,* 232 Va. 302, 305–06, 351 S.E.2d 14, 16 (1986). WMATA asserts that the Virginia Supreme Court's early "stranger to the work" test controls that determination. *See Williams v. E.T. Gresham Co.,* 201 Va. 457, 465, 111 S.E.2d 498, 503 (1959); *Anderson v. Thorington Construction Co.,* 201 Va. 266, 272, 110 S.E.2d 396, 400 (1959), *appeal dismissed,* 363 U.S. 719, 80 S.Ct. 1596, 4 L.Ed.2d 1521 (1960). Under that formulation, which seems to have been partially revived in recent cases, *see Smith v. Horn,* 232 Va. at 306–08, 351 S.E.2d at 16–18; *Whalen v. Dean Steel Erection Co.,* 229 Va. 164, 167–70, 327 S.E.2d 102, 104–06, *appeal dismissed,* 474 U.S. 802, 106 S.Ct. 33, 88 L.Ed.2d 26 (1985); *Cooke v. Skyline Swannanoa, Inc.,* 226 Va. 154, 158–59, 307 S.E.2d 246, 248–49 (1983), the issue is whether the subcontractor is "a stranger to the [owner's] employment and the work"; if not, the subcontractor's employees are deemed the owner's statutory employees. *Anderson,* 201 Va. at 270, 110 S.E.2d at 400. The test is an expansive one, as *Anderson* and *Williams* (both discussed below) illustrate.

■ Best responds that the "normal work" test of *Shell Oil Co. v. Leftwich,* 212 Va. 715, 187 S.E.2d 162 (1972), controls this case. Under that more restrictive test, an activity is part of the owner's trade or

---

*"Question" in the District Courts,* 53 COLUM.L.REV. 157, 160–63, 184–96 (1953).

**2.** Section 80 of the WMATA Compact provides that WMATA "shall be liable for ... [certain] torts ... in accordance with the law of the applicable signatory (including rules on conflict of laws)...." 80 Stat. 1350. Both parties agree that Virginia law controls this case.

**3.** Section 65.1–41 literally provides only that the statutory employer is subrogated to portions of the plaintiff's claim against an "other party." The Virginia courts have construed the provision to preserve by implication a claim for the employee against such other parties. *See Anderson v. Thorington Construction Co.,* 201 Va. 266, 270–71, 110 S.E.2d 396, 399 (1959).

business if that "activity is, in that business, *normally* carried on through employees rather than independent contractors." *Id.* at 722, 187 S.E.2d at 167 (quoting 1A A. LARSON, THE LAW OF WORKMEN'S COMPENSATION § 49.12, at 872–73·(1973)) (emphasis by court). *See also Southeastern Tidewater Area Manpower Authority v. Coley,* 221 Va. 859, 863, 275 S.E.2d 589, 591 (1981); *Bassett Furniture Industries, Inc. v. McReynolds,* 216 Va. 897, 902, 224 S.E.2d 323, 326 (1976); *Sun Oil Co. v. Lawrence,* 213 Va. 596, 598, 194 S.E.2d 687, 688 (1973) (per curiam). The test looks to the activity that the owner in question normally carries on through its own employees, not what firms do generally in the industry. *See Bassett Furniture,* 216 Va. at 903–04, 224 S.E.2d at 327; *Shell Oil,* 212 Va. at 722–23, 187 S.E.2d at 167. Accordingly, under this test it is only in the abnormal situation that an owner will be found to be the statutory employer of a worker it did not actually employ.

The interrelationship between those two tests is a puzzle that we need not try to solve here. After oral argument in this case, the Virginia Supreme Court explicitly refused to apply *Shell Oil's* normal-work test in the context of a "case involving either a public utility or a governmental entity." *Henderson,* 233 Va. at ___, 355 S.E.2d at 599. We must of course follow suit.

In *Henderson,* the defendant telephone company was a public utility charged with the responsibility of " 'provid[ing] the necessary equipment and plant facilities within its certificated areas to handle the local and toll traffic so that certain conditions of service will be met." *Id.* at ———, 355 S.E.2d at 597 (citation to mandate omitted). The company engaged a private firm for most of the work of installing its central office equipment. An employee of the contractor sued the telephone company for injuries he sustained while working on the contract.

The court held that the contractor's employee was a statutory employee of the telephone company, and was therefore barred from tort recovery against the company. It began by reciting two guiding concerns, both of which support an expansive interpretation of "trade, business or occupation." First, "[t]he Act is highly remedial and should be liberally construed to advance its purpose." *Id.* at ___, 355 S.E.2d at 599 (citations omitted). Second, "the fundamental purpose of the Act is to give compensation for accidental [workplace] injuries...." *Id.* With those principles in mind, the court proceeded to reject the normal-work test and, for public utilities and governmental entities, to shift the focus to the agency's mandate:

> The *Shell Oil Co.* [normal-work] test has never been applied by this Court in a case involving either a public utility or a governmental entity.[4] This is so for good reason. The test is merely an approach that is useful in determining an entity's trade, business, or occupation. It is not designed for every situation. It works best in cases involving private businesses because those entities often define their trade, business, or occupation by their conduct. With regard to such entities, what they do on a day-to-day basis provides a reasonably reliable indicator of their trade, business, or occupation.
>
> Yet, public utilities and governmental entities are of another class. It is not simply what they do that defines their trade, business, or occupation. What they are supposed to do is also a determinant. Whereas a private business entity is essentially self-defining in terms of its trade, business, or occupation, a public utility has duties, obligations, and responsibilities imposed upon it by statute, regulation, or other means.

*Id.* at ___–___, 355 S.E.2d at 599.

◼ Applying this test, the *Henderson* court concluded that the installment of central office equipment—which was essential

---

**4.** *But see Southeastern Tidewater Area Manpower Authority v. Coley,* 221 Va. at 863–64, 275 S.E.2d at 591–92 (applying *Shell Oil* normal-work test to governmental entity with statutory mandate).

to telephone service under the mandate—was part of the telephone company's trade or business. *Id.* at —— – ——, 355 S.E.2d at 600–01. The court characterized as "myopic" the plaintiff's stress on the telephone company's normal practice of farming the work out. *Id.* at ——, 355 S.E.2d at 601.

WMATA's mandate is at least as broad as that of the telephone company in *Henderson.* It is charged, among other things, with the responsibility "to plan, develop, finance and cause to be operated improved transit facilities ... utilizing to their best advantage the various modes of transportation...." WMATA Compact § 2, 80 Stat. 1325. The sweep of this mandate is confirmed by the Compact's definition of "transit facilities" to include

> all real and personal property ... necessary or useful in rendering transit service ... including ... stations, terminals ... and all equipment, fixtures, buildings and structures and services incidental to or required in connection with the performance of transit service....

WMATA Compact § 1(f), 80 Stat. 1325. Escalator repair falls well within the bounds of WMATA's statutory mandate.

That does not, however, end the inquiry. The *Henderson* court did not by any means hold that a governmental entity is a statutory employer with respect to *any* work within its legal mandate. But its reliance on *Anderson* and *Williams,* apparently reviving the stranger-to-the-work test in that context, suggests that the test is quite broad. *Anderson* held that a state highway authority charged with the responsibility to construct, maintain and operate a turnpike project was the statutory employer of the employees of a contractor that was engaged in building a highway. 201 Va. at 272, 110 S.E.2d at 400. And *Williams* held that a ferry district charged with the construction, operation and maintenance of a ferry service, was the statutory employer of the workers of a subcontractor engaged to drive piles as part of a dock repair operation. 201 Va. at 465, 111 S.E.2d at 503–04.

We recognize that escalator repair is, in a sense, less essential to the provision of transit service than are central office facilities to the provision of telephone service; or road construction to a highway system; or docks to ferry service. While every ferry system of which we are aware has docks and every highway system has roads, some of the largest mass transit systems in the world lack escalators. Of course, if Westinghouse's task is viewed at a higher level of generality, it too is essential: all subway systems must enable passengers to move from street level to subway and back. But we need not engage in such semantic maneuvers. None of the controlling Virginia cases suggests that an activity must be absolutely essential to the agency's mission in order to constitute part of its trade or business. To the contrary, *Henderson* 's fundamental principles favoring liberal interpretation of trade or business seem to preclude any such essentiality requirement.

■ Escalator service is, at the very least, central to WMATA's mission—moving people from one place to another. We hold that Westinghouse was engaged in part of WMATA's trade or business, and that WMATA was therefore Best's statutory employer. Accordingly, this action is barred.

The judgment of the District Court is *Reversed.*

MIKVA, Circuit Judge, concurring:

I agree with the court that under the very recent proclamation of the Virginia Supreme Court, appellee cannot maintain this suit because it so happens that his employer contracted with a governmental entity whose broad statutory mandate appears to embrace escalator repair. Although the *Henderson* case seems out of step with other decisions of the Virginia Supreme Court and of other state courts, it is the last word from the court of highest authority, and we are obliged to carry it out, at least until the next last word.