Dorothy M. FARISH, Guardian for Shirley F. Farish, Appellant,

v.

COURION INDUSTRIES, INC. and Otis Elevator Company, Appellees.

No. 82–1964.

United States Court of Appeals, Fourth Circuit.

Argued May 11, 1983.

Decided Dec. 1, 1983.

Paul M. Peatross, Jr., Charlottesville, Va. (Carter & Peatross, Charlottesville, Va., on brief), for appellant.

G. Kenneth Miller, Richmond, Va. (May, Miller & Parsons, Richmond, Va., on brief), and Frank N. Cowan, Richmond, Va. (Deborah S. O'Toole, Cowan, Owen & Nance, Richmond, Va., on brief), for appellees.

Before SPROUSE and ERVIN, Circuit Judges, and WYZANSKI, Senior District Judge.*

* Hon. Charles Edward Wyzanski, Jr., Senior District Judge, District of Massachusetts, sitting by designation.

SPROUSE, Circuit Judge:

Dorothy M. Farish, wife and guardian of Shirley F. Farish, appeals the dismissal of her claim against Courion Industries, Inc. (Courion), and the grant of summary judgment in favor of Otis Elevator Company (Otis) in this diversity action for personal injury damages. The principal question presented by the district court's dismissal of the claim against Courion is whether the Virginia statute abolishing the privity defense in product liability cases operates retroactively or prospectively. The question raised by the summary judgment for Otis is whether the protective umbrella of the University of Virginia's Workmen's Compensation coverage extends to Otis. We affirm the judgment in favor of Courion, but reverse the summary judgment in favor of Otis.

Shirley F. Farish, an employee of the University of Virginia (University), was working within the scope of his employment as a plumber when he was totally and permanently injured in a University Hospital elevator. He was removing a tool cart from a freight elevator when a lower part of the elevator door fell to the floor below. The unsupported top portion of the door then crashed downward, striking the rod arm which had held the lower door. The rod arm was propelled upward by the force of the blow and struck Farish in the head. This tragic sequence of events occurred on April 6, 1981.

Courion had sold the elevator door to the University contractor in 1958. Dorothy Farish, as guardian, brought this action against Courion, alleging negligence in the design, manufacture, testing, and inspection of the elevator doors. She also alleged breach of warranty by Courion. The district court dismissed these claims because the injured party was not in privity with Courion. Farish named Otis as a co-defendant in the action, alleging it had negligently performed its contractual duty to inspect the elevator and doors. Otis operated under two contracts with the University, one to maintain fully six passenger elevators in the medical complex and the other to pro-

vide for the "survey, test and inspection" of all University elevators. The elevator on which Farish was injured was covered by this second contract. The district court granted summary judgment to Otis, ruling that the University, not Otis, was the statutory employer under the Workmen's Compensation Act and thus Otis was not an "other employer" who could be sued by Farish for the injuries he incurred on the job which were compensable under the Act.

I

We first consider the district court's dismissal of the claims against Courion.

Farish concedes that at the time the door was sold in 1958, Virginia law would have barred her suit against Courion because the two were not in privity. She contends, however, that the 1962 Virginia statute abolishing the privity requirement in actions against manufacturers applies retroactively to the 1958 sale of the door.

The Virginia legislature eliminated the privity requirement for manufacturer liability in 1962:

> Lack of privity between plaintiff and defendant shall be no defense in any action brought against the manufacturer or seller of goods to recover damages for breach of warranty, express or implied, or for negligence, although the plaintiff did not purchase the goods from the defendant, if the plaintiff was a person whom the manufacturer or seller might reasonably expect to use, consume, or be affected by the goods; *however, this section shall not be construed to affect any litigation pending at its effective date* (emphasis added).

The "privity statute" was amended in 1965, effective 1966, but the changes were minor. The statute was given a new caption and incorporated into the newly enacted Virginia Commercial Code. Virginia Code § 8.2–318 (1965). Significantly, the only change concerning the operative date of the privity statute was the substitution of the phrase "on June 29, 1962" for the words "at its effective date." This provision of the Virginia Commercial Code has remained un-

changed since the 1965 amendments. The Virginia legislature did, however, enact a complementary statute in 1966, which abolished the privity defense "[i]n cases not provided for in Section 8.2–318" in the event of death, personal injury or property damage caused by the negligence. Virginia Code § 8.01–223 (1977). These statutes are in derogation of the common law privity requirement; under Virginia's rules of statutory construction, such statutes are not to be extended beyond their express terms. *Chesapeake & Ohio Railway v. Kinzer,* 206 Va. 175, 142 S.E.2d 514 (1965); *Sellers v. Bles,* 198 Va. 49, 92 S.E.2d 486 (1956).

In the absence of legislative expression to the contrary, statutes are presumed to operate prospectively. *Paul v. Paul,* 214 Va. 651, 203 S.E.2d 123 (1974); *Gloucester Realty Corp. v. Guthrie,* 182 Va. 869, 30 S.E.2d 686 (1944); *Ferguson v. Ferguson,* 169 Va. 77, 87, 192 S.E. 774, 777 (1937). Moreover, it is a practically universal rule of statutory construction that, absent plain legislative intent, statutes will not be applied retroactively to create new duties and obligations or to disturb vested rights. *Myers v. Council Manufacturing Corp.,* 276 F.Supp. 541 (W.D.Ark.1967); *Walke v. Dallas, Inc.,* 209 Va. 32, 161 S.E.2d 722 (1968); *Phipps v. Sutherland,* 201 Va. 448, 111 S.E.2d 422 (1959). We agree with the district court that a reading of the statutes involved and the Virginia case law on the subject of the prospective application of statutory enactments indicates a legislative intent that Sections 8.01–223 and 8.2–318 apply only from the dates of their enactment.

This interpretation of the Virginia legislature's intent, however, does not dispose completely of Farish's appeal. She contends that Section 8.10–101 of the 1966 Virginia Commercial Code, of which the privity statute is a part, makes the date of the accident the crucial time for determining whether the privity defense may be raised. Since her husband's accident occurred in 1981, well after the effective date of the statute abolishing privity, she argues that even a prospective application of the statute bars recognition of the privity defense in this case.

Section 8.10–101 contains a general statement regarding the effective date of the Virginia Commercial Code: "This Act [Commercial Code] shall become effective on January one, nineteen hundred sixty-six. It applies to *transactions entered into and events occurring after that date.*" (Emphasis added). Farish seizes upon this language to support her argument that the date of the accident, not the date of the sale, is the controlling transaction for determining whether Courion can invoke the privity defense. She provides no direct support, however, for that bald assertion, nor do we find independent authority for such an interpretation from the drafters of the Code, text writers or case law. The cases cited by Farish—*Sides v. Richard Machine Works, Inc.,* 406 F.2d 445 (4th Cir.1969) and *Barnes v. Sears, Roebuck & Co.,* 406 F.2d 859 (4th Cir.1969)—hold correctly that, for the purpose of applying the statute of limitations, the clock starts running from the time of the transaction fixing the liability. Those cases, however, do not bear on the "transaction" issue in this case, and indeed their citation completely obscures the question. In *Sides* and *Barnes,* the substantive duties of the defendants were not in question. The applicable law plainly recognized that the defendants were obligated to safeguard the injured parties from the sort of harm they ultimately suffered. The court's decisions in those cases turned on the issue of which "transactions" constituted breaches of the defendant's recognized duties. Here, in contrast, we are concerned with whether the substantive duty to protect Farish from this sort of harm existed at all. The relevant transaction, then, is not the unfortunate accident, but Courion's sale of the elevator to the University in 1958.

The privity of contract doctrine was a part of Virginia law prior to 1962. *C.W. Regan, Inc. v. Parsons, Brinckerhoff, Quade & Douglas,* 411 F.2d 1379 (4th Cir.1969); *General Bronze Corp. v. Kostopulos,* 203 Va. 66, 122 S.E.2d 548 (1961); *Harris v. Hampton Roads Tractor & Equipment Co.,* 202 Va. 958, 121 S.E.2d 471 (1961); *H.M. Glea-*

*son & Co. v. International Harvester Co.,* 197 Va. 255, 88 S.E.2d 904 (1955). Manufacturers and sellers of products in this period had duties only to parties to the sales contract, and those duties were determined at the time the product was sold. *Sides v. Richard Machine Works, Inc.,* 406 F.2d 445 (4th Cir.1969); *Trimyer v. Norfolk Tallow Co.,* 192 Va. 776, 66 S.E.2d 441 (1951). Courion sold the door while this body of law was operative, and its substantive duties were limited accordingly. Farish urges an interpretation of Section 8.10–101 that would nullify completely a large portion of pre-1962 Virginia law by greatly increasing manufacturers' duties to those who come in contact with their products. The legislature may have the power to reach deep into the past and create duties where none existed before, but we find no such legislative purpose here. The "transaction or event" language of Section 8.10–101 plainly was intended to identify the point at which substantive duties were created under the Virginia Commercial Code. Because Courion's substantive duties were fixed by the sales transaction occurring before the effective date of the Code, the district court correctly determined its liability under pre-Code case law.

## II

The district court's summary judgment in favor of Otis, however, was in error.

The district court ruled that because its employees survey, test, and inspect all elevators in University buildings under a contract with the University, Otis is protected by the University's Workmen's Compensation coverage. Farish concedes that she cannot sue the University, her husband's employer, but contends that Otis, an independent contractor not providing Workmen's Compensation coverage for her husband, is liable in a common law action for negligently causing his injury. The resulting issue is not novel, either in Virginia or elsewhere. It is simply whether Otis is an "other party" under the Workmen's Compensation laws of Virginia and thus can be sued by Farish even though her husband received Workmen's Compensation benefits from his employer, the University, who is the "owner" who hired Otis as an independent contractor.[1] The answer to that issue, in turn, depends upon whether the University is a statutory employer under the Workmen's Compensation laws. *Sears, Roebuck & Co. v. Wallace,* 172 F.2d 802 (4th Cir.1949); *Slusher v. Paramount Warrior, Inc.,* 336 F.Supp. 1381 (W.D.Va.1971); *Bassett Furniture Industries, Inc. v. McReynolds,* 216 Va. 897, 224 S.E.2d 323 (1976); *Shell Oil Co. v. Leftwich,* 212 Va. 715, 187 S.E.2d 162 (1972); *Anderson v. Thorington Construction Co.,* 201 Va. 266, 110 S.E.2d 396 (1959), *appeal dismissed,* 363 U.S. 719, 80 S.Ct. 1596, 4 L.Ed.2d 1521 (1960); *Williams v. E.T. Gresham Co.,* 201 Va. 457, 111 S.E.2d 498 (1959); *Sykes v. Stone & Webster Engineering Corp.,* 186 Va. 116, 41 S.E.2d 469 (1947); 1C A. Larson, *Law of Workmen's Compensation* § 49 (1980).

Section 65.1–40 of the Virginia Code expresses the universal principle that an employer providing Workmen's Compensation benefits to injured employees is immune from common law suit for negligently causing the injuries. *See Slusher v. Paramount Warrior, Inc.,* 336 F.Supp. 1381 (1971); *Floyd v. Mitchell,* 203 Va. 269, 123 S.E.2d 369 (1962); *Feitig v. Chalkley,* 185 Va. 96, 38 S.E.2d 73 (1946). The language in Sections 65.1–41 and 65.1–103, in contrast, has been uniformly interpreted to allow a common law negligence action for injuries against an "other party," that, although performing work or providing services for the employer, is a "stranger" to the employer's normal work. *Bristow v. Safway Steel Products,* 327 F.2d 608 (4th Cir. 1964); *Burroughs v. Walmont, Inc.,* 210 Va. 98, 168 S.E.2d 107 (1969); *Floyd v. Mitchell, supra; Rea v. Ford,* 198 Va. 712, 96 S.E.2d 92 (1957). Identifying, in a given case, which contractor or subcontractor is an "other party," however, is mildly complicated by the Virginia statutes and court deci-

---

1. If Farish were successful in an action against Otis, he must repay the University the amount of Workmen's Compensation he received. Virginia Code § 65.1–41 (1980).

sions which link the determination of who is an "other party" with the concept of "statutory employer." *Slusher, supra.*

Sections 65.1–29 through 65.1–32 require the owners of a project to accept responsibility for the compensation of injured employees of contractors hired by the owner. The owner thus becomes the "statutory employer" of the contractor's employees who, in turn, are the "statutory employees" of the owner. *Slusher, supra; Anderson v. Thorington Construction Co.,* 201 Va. 266, 110 S.E.2d 396 (1959); *Sykes v. Stone & Webster Engineering Corp.,* 186 Va. 116, 41 S.E.2d 469 (1947).

Virginia Code § 65.1–29 provides:

When any person (in this section and §§ 65.1–31 and 65.1–32 referred to as "owner") undertakes to perform or execute any work which is a part of his trade, business or occupation and contracts with any other person (in this section and §§ 65.1–31 to 65.1–34 referred to as "subcontractor") for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any workman employed in the work any compensation under this Act which he would have been liable to pay if the workman had been immediately employed by him. (Code 1950, § 65–26; 1968, c. 660.)

In *Sears, Roebuck & Co.,* the Virginia Supreme Court in interpreting the language of Section 65.1–29, which has remained essentially unchanged, said:

[T]he chief purpose of enactments like the Virginia statute ... is to "protect the employees of subcontractors who are not financially responsible and to prevent employers from relieving themselves of liability (for compensation) by doing through independent contractors what they would otherwise do through direct employees."....  The statute was not intended to relieve employers from liability for their own negligence which causes

injury to the employees of independent contractors engaged in the performance of work for employers outside the scope of the latter's occupation.

*Sears, Roebuck & Co. v. Wallace, supra,* 172 F.2d at 810.

The Virginia Supreme Court in *Bassett,* quoting *Anderson,* also stated the purpose of the statute to be:

to bring within the operation of the Compensation Act all persons engaged in any work that is a part of the trade, business or occupation of the original party who undertakes as owner, or contracts as contractor, to perform that work, and to make liable to every employe[e] engaged in that work every such owner, or contractor, and subcontractor, above such employe[e].  But when the employe[e] reaches an employer in the ascending scale, of whose trade, business or occupation the work being performed by the employe[e] is not a part, then that employer is not liable to that employe[e] for compensation ....

*Bassett, supra,* 224 S.E.2d at 326.

The court continued, "[a]t that point Virginia Code § 65.1–5 intervenes and the employe[e]'s right of action at common law is preserved." *Id.*[2]

■ Although the basic purpose of Section 65.1–29 is to assure that workers are protected by responsible employers paying Workmen's Compensation benefits, the section has the ancillary effect of placing independent contractors subject to its terms under the protective umbrella of the owner's Workmen's Compensation coverage. An independent contractor performing services for a "statutory employer" cannot be an "other party" liable in a common law action. *Turnage v. Northern Virginia Steel Corp.,* 336 F.2d 837 (4th Cir.1964).  The contractor's employees are therefore barred from suing their employer to the same extent that they are barred from suing the owner who is their "statutory employer."

**2.** Virginia Code § 65.1–5 provides: "Nothing in this Act ... shall be construed to make ... the employees of an independent contractor the employees of the person ... contracting with such independent contractor."

Likewise, an employee of the owner, such as Farish, could not sue the independent contractor, such as Otis, for injuries caused by the contractor's negligence, if it is performing the normal work of the owner. *Turnage, supra; Anderson, supra; Williams, supra.*

■ The type of work performed by the independent contractor determines whether the owner with whom it has contracted is the "statutory employer" of the contractor's employees. If the independent contractor is performing the owner's normal work, the owner is a statutory employer of the former's employees. The Virginia Supreme Court, in *Bassett,* quoted and emphasized a test, first announced in *Shell Oil Co.,* for determining whether an owner is a "statutory employer":

> [T]he test is not one of whether the subcontractor's activity is useful, necessary, or even absolutely indispensable to the statutory employer's business, since, after all, this could be said of practically any repair, construction or transportation service. The test (except in cases where the work is obviously a subcontracted fraction of a main contract) is whether this indispensable activity is, in that business, *normally* carried on through employees rather than independent contractors. (Emphasis supplied) citations omitted.

*Bassett, supra,* 224 S.E.2d at 326 (quoting *Shell Oil Co. v. Leftwich, supra,* 187 S.E.2d at 167).

The "normal work" test, when applied to this case, does not bring Otis under the University's workmen's compensation coverage and immunize it from suit. *See Bristow v. Safway, supra; Burroughs v. Walmont, Inc., supra; Slusher, supra;* 1C A. Larson, *Law of Workmen's Compensation,* § 49.12, 9–37 *et seq.* (1980). While University employees effect minor elevator repairs in most of the buildings, the responsibility for all major repairs at the time of the accident belonged to Otis or other elevator companies. It is especially significant that surveys, tests, and inspections were conducted exclusively by Otis employees because such service required particular skills and expertise.

■ A surprising number of cases in jurisdictions honoring the "statutory employer" rule have involved subcontracted maintenance activities. The general rule is that "[m]ajor repairs, or specialized repairs of the sort which the employer is not equipped to handle with his own force, are held to be outside his regular business ...." Thus, in those cases, the owner is not the "statutory employer" of the contractor's employees and an action may be maintained against it as an "other party." 1C A. Larson, *supra,* § 49.12, 9–37 to 9–39. Larson concludes:

> In addition to the test based on regularity or predictability of the activity, and on its relation to the way this employer got this kind of job done in the past, a helpful additional test is that which asks whether this employer is equipped normally to handle this task, both as to skilled man power and as to tools. The overall test has never been put better than in the following passage in a Missouri decision:
>
> > "While the refacing of the shelves ·was unquestionably related to the general operation of the store, it was something to be done only occasionally at most. Moreover it was a job not only calling for special skill and experience over and above that possessed by or expected of the ordinary employee in a retail store, but also requiring special tools in its performance which the Newports had no reason to keep on hand."

1C A. Larson, *supra,* § 49.12, 9–41.

The Virginia Supreme Court in *Bassett* quoted with approval this passage from Larson. *Bassett, supra,* 224 S.E.2d at 326.

■ Otis, on the other hand, cites *Anderson* and *Williams* to support its position that the University was a statutory employer to the employees of Otis and that Farish's only recourse was under Workmen's Compensation. Those cases, however, are factually distinguishable from this case, as can be readily ascertained from the court's

reasoning. *Anderson* concerned the construction of the Richmond-Petersburg Turnpike. The Turnpike Authority had been given the statutory duty to construct, operate, and maintain the Turnpike, and to that end had hired both a firm of consulting engineers and a construction company. Following an accident, a consulting engineer brought a common law action for personal injuries against the construction company. The Virginia Supreme Court held that both the engineers and the construction company employees were statutory employees of the Turnpike Authority, and that the Authority's Workmen's Compensation coverage barred a common law action. The court emphasized that the Authority by statute had been not only empowered, but instructed to engage in the business of construction of the Turnpike, that the companies with which it contracted were likewise engaged in the business of construction and that both the plaintiff and defendant were independent contractors engaged in construction on the same project.

The court reached a similar result in *Williams*. There a construction company contracted with the Chesapeake Bay Ferry District to help drive piles. The plaintiff had been injured while assisting the company's crane crew to drive piles. The Virginia Supreme Court held the contractor was under the same Workmen's Compensation canopy as the Ferry District. Here, again, the court emphasized that the Ferry District was under the mandate of the Virginia legislature to construct and maintain the project in which the plaintiff was injured, and that there was no question that the independent contractor construction company engaged in driving piles was performing the normal business of the Ferry District.

The general rule for determining statutory employer status in Virginia was succinctly restated in *Bassett*. Numerous cases from other jurisdictions apply the same rule in gauging whether an owner who contracts for maintenance service is a statutory employer. 1C A. Larson, *supra*, § 49.12, 9–41. The Virginia Supreme Court, however, emphasized that its decisions depended on the facts and circumstances of each case. *Bas-*

*sett, supra.* Applying this same reasoning, it appears that the specialized phase of maintenance conducted by Otis for the University was not part of the University's normal business. True, the University must maintain physical facilities as part of its primary business of education, but, as the great majority of cases illustrates, specialized maintenance requiring skills and expertise not possessed by its employees is not a normal part of maintaining its buildings.

JUDGMENT FOR COURION AFFIRMED; JUDGMENT FOR OTIS REVERSED.