Lee Roy **VESS, Jr.,** Administrator of the Estate of Ronald W. Lewis, Jr., and Joyce E. Lewis, Administratrix of the Estate of Ronald W. Lewis, Jr., Plaintiffs,

v.

**DAVIS ELECTRICAL CONSTRUCTORS, INCORPORATED,** Defendant.

Civ. A. No. 84–1058–R.

United States District Court, W.D. Virginia, Roanoke Division.

July 18, 1985.

---

Erwin S. Solomon, William A. Parks, Jr., Erwin S. Solomon & Associates, Hot Springs, Va., for Vess.

William B. Poff, A. Carter Magee, Jr., Woods, Rogers & Hazelgrove, Roanoke, Va., for Davis Elec. Constructors.

## MEMORANDUM OPINION

KISER, District Judge.

This matter is before this Court on Defendant's Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a). The issues have been fully briefed and argued, and this Motion is now ripe for disposition.

This action arises from the accidental electrocution of Ronald W. Lewis, Jr., at the construction site of Virginia Electric Power Company's ("Vepco") Bath County, Pump Storage Project ("Project") in Bath County, Virginia. Plaintiffs' decedent, Mr. Lewis, was employed as a carpenter with Daniel Construction Company ("Daniel"). Daniel's role changed somewhat during the course of the project; however, they were generally responsible for supervising and performing much of the construction of the project. Davis Electrical Constructors, Incorporated ("Davis") contracted to perform all the electrical work necessary for the construction of the project. Although Daniel participated in negotiating the agreement, the evidence before the Court indicated that Daniel acted solely as Vepco's agent when entering into the contract with Davis.

On March 19, 1984, Mr. Lewis was transporting some building material along a service route when he received a fatal electrical shock from a high voltage cable which was buried along the route. The Complaint alleges that Davis was responsible for the installation of the cable and that they were negligent in the installation and maintenance of the cable. In defending this common law action for negligence, Davis filed this Motion for Summary Judgment on the grounds that the Plaintiffs' exclusive remedy was under the Virginia Workmen's Compensation Act, *Va.Code* § 65.1–1, *et seq.*, 1950, as amended and that this common law action was barred. *See Va.Code* §§ 65.1–40 and 65.1–41, 1950, as amended. The record before this Court indicates that Mr. Lewis did not have any statutory dependents within *Va.Code* § 65.-1–66; however, the Code does provide for burial and transportation expenses under *Va.Code* § 65.1–70. These benefits were provided to his estate. The question then becomes whether the entitlement to these benefits provides the Plaintiffs' exclusive

remedy and thereby precludes the pursuit of this common law action.

The analysis of this question begins with the fundamental proposition that the rights and remedies granted under the Workmen's Compensation Act for work-related injuries and death *exclude* all other rights and remedies of that employee or his/her estate. *Va.Code* § 65.1–40. Notwithstanding this fact, *Va.Code* §§ 65.1–41 and 65.1–43 have been "uniformly interpreted to allow a common law negligence action for injuries against an 'other party.'" *Farish v. Courion*, 722 F.2d 74, 78 (4th Cir.1983). Thus, the focus of this inquiry must be whether Davis is an "other party" within the meaning of § 65.1–41.

The Fourth Circuit has noted that identifying who is an "other party" in a given situation has been "mildly complicated by the Virginia statutes and court decisions which link the determination of who is the 'other party' with the concept of 'statutory employer.'" *Farish, supra,* at 78. While the two concepts find their genesis in separate Code provisions, in many instances they are indeed closely intertwined, and thorough consideration must be given to both before the question can be resolved.

■ The statutory employer concept originates from *Va.Code* § 65.1–29.[1] The central purpose of the statute is:

> To bring within the operation of the Compensation Act all persons engaged in any work that is a part of the trade, business or occupation of the original party who undertakes as owner, or contracts as contractor, to perform that work, and to make liable to every employee engaged in that work every such owner, contractor and subcontractor above the employee.

*Bassett Furniture Industries v. McReynolds*, 216 Va. 897, 224 S.E.2d 323, 326 (1976).

Basically the Code section was to prevent employers from escaping coverage of the Workmen's Compensation Act by doing, through independent contractors and subcontractors, what they normally would have done through employees. The Fourth Circuit notes, however, that "the section has the ancillary effect of placing independent contractors subject to its terms under the protective umbrella of the owner's workmen's compensation coverage. An independent contractor performing services for a 'statutory employer' cannot be an 'other party' liable in a common law action." *Farish, supra,* at 79. Thus, I believe that before I can determine whether Davis was an "other party" subject to suit, I must ascertain the nature of the trade, occupation and business in which Mr. Lewis was involved as well as every contractor and owner above him.

■ The test for "statutory employer" status was first set forth by Professor Arthur Larson in the *Law of Workmen's Compensation* in Volume 1(c) wherein he stated:

> The test is not one of whether the subcontractor's activity is useful, necessary, or even absolutely indispensable to the statutory employer's business since after all, this could be said of practically any repair, construction or transportation service. The test (except in cases where the work is obviously a subcontracted fraction of a main contract) is whether this indispensable activity is, in that business, normally carried on through employees rather than independent contractors.

*Larson* at § 49.12, p. 9–53.

This test has been followed by the Virginia Supreme Court in numerous cases.

---

**1.** When any person (in this section and §§ 65.1–32 referred to as an 'owner') undertakes to perform or execute any work which is a part of his trade, business or occupation and contracts with any other person (in this section and §§ 65.1–31 to 65.1–34 referred to as 'subcontractor') for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any workman employed in the work any compensation under this Act which he would have been liable to pay if the workman had been immediately employed by him.

*Va.Code* § 65.1–29, 1950, as amended.

*See Shell Oil Company v. Leftwich*, 212 Va. 715, 187 S.E.2d 162 (1972); *Bassett Furniture Industries, Incorporated v. McReynolds*, 216 Va. 896, 224 S.E.2d 323 (1976). Another case interpreting this section, which I find particularly helpful, is *Walker v. United States Gypsum*, 270 F.2d 857 (4th Cir.1959).

In *Gypsum*, the plaintiff was the employee of a plumbing subcontractor and was injured while making repairs at a Gypsum plant. The plaintiff brought this action against Gypsum who defended on the ground that plaintiff's exclusive remedy was under the Workmen's Compensation Act and that, in essence, Gypsum was a statutory employer of the plaintiff, Walker. In support of its motion, Gypsum submitted an affidavit of its works manager, Mr. Thompson. The court then directed that Mr. Thompson appear before the court and counsel to offer sworn testimony in order that the plaintiff might have an opportunity to cross-examine him. From this proceeding, the evidence revealed that Gypsum had a Construction and Engineering Division (C & E) and that the number of employees varied at the different plants; however, there were approximately 32 individuals employed at Gypsum's Norfolk plant in the C & E Department. These individuals were generally identified on the payroll as mechanics. When new construction was envisioned, the C & E Division of Gypsum would work with outside consultants. "The construction work, itself, [was] done by the construction division, though when an entirely new plant [was] being erected, some or all of the work [might be] subcontracted." *Walker v. Gypsum, supra*, at 861.

In 1955, the Norfolk plant was being enlarged which required certain work in the old building including relocation of sprinkler system pipes and other pipelines. "For the new addition Gypsum acted as owner-contractor. There was no independent general contractor on the job, but the contract was entered into with several different companies." *Id.* During this work, some of Gypsum's approximately 32 mechanics were involved in removing and relocating the pipelines in the old building to accommodate the new construction. Gypsum could not complete all the work with its staff so they hired an independent plumbing contractor to assist them. The Plaintiff was employed by one of the independent plumbing contractors and was involved in the actual work of removing and relocating the pipes when he was injured. He contended that Gypsum was not in the business of doing plumbing construction for others. *Id.* at 862. He argued that a manufacturer doing construction work for itself exclusively could not be a statutory employer. The court held that:

> Gypsum continuously maintains a construction division, and was actively engaged in the construction of this very project. It was acting as general contractor and, through its own mechanics was removing and relocating pipelines in the old building, the work in which the plaintiff was engaged when he was injured. There is no room for an inference that Gypsum once was, but is no longer, engaged in that business.

*Walker v. Gypsum, supra*, at 862.

■ I believe *Gypsum* is dispositive of this preliminary question in our case. One of the issues which I must resolve is whether Vepco was the statutory employer of the Plaintiffs' decedent, Mr. Lewis. On the basis of *Gypsum*, I find that it was.

On June 4, 1985, this Court conducted an evidentiary hearing similar to the one held in *Gypsum* for the precise purpose of allowing the Plaintiff an opportunity to cross-examine Vepco officials and more fully develop the evidence relevant to this question. The evidence produced at that proceeding indicated that Vepco, like Gypsum, had a Construction and Engineering Division that was actively involved in the design, construction, and maintenance of electrical generating facilities. In 1984, there were 1,000 employees in Vepco's C & E Division. Approximately 500 of these were employed at the Bath County Project. While Vepco did not have workers involved in the hands-on construction, the evidence

indicated that it could have taken on enough employees to do so; however, it determined that such was not the best course for the company. Vepco had the expertise and had, in fact, built dams and generating facilities for themselves in the past. In all other respects, Vepco was acting at the Project as its own general contractor. Vepco personnel supervised the actual construction with its own employees going down the chain of command as far as foreman. They were directly involved in the construction of both temporary and permanent electrical lines. In addition, they were responsible for the scheduling and coordinating the construction with the different independent contractors. They purchased the materials, executed response plans, made the cost and industrial engineering studies, hired and brought in specialists, and generally coordinated the entire project. In every respect, Vepco was acting as its own general contractor. The fact that Vepco is not in the business of constructing generating facilities for other industries is irrelevant. As the Fourth Circuit noted in *Gypsum:*

> Few manufacturers do plant maintenance or construction work for others, but when one regularly and customarily does such work for himself it is part of his trade, business or occupation within the meaning of [§ 65.1–29] of the *Code of Virginia,* 1950.

*Gypsum* at 863.

I conclude that it is in Vepco's trade, occupation or business to design, supervise, and construct generating facilities for its own use, and that Daniel, Davis, and Lewis were engaged in this work and that at the time of the accident in question were involved in Vepco's business. Vepco would be considered the statutory employer of all those involved in the construction of the Project.

Vepco's status as statutory employer would preclude a common law action against it; however, the question becomes what impact does Vepco's status as statutory employer have on the present litigation against Davis, a subcontractor on the Project. The Fourth Circuit notes, § 65.1–29 has the ancillary effect of "placing independent contractors subject to its terms under the protective umbrella of the owner's workmen's compensation coverage." *Farish* at 79. I find that even though Davis and Daniel were independent contractors, their employees were statutory employees of Vepco since both contractors were engaged in the trade, occupation and business of Vepco. Thus, the employees of one cannot be allowed to pursue a common law negligence action against the other. The case of *Anderson v. Thorington,* 201 Va. 266, 110 S.E.2d 396 (1959), is controlling on this point.

*Anderson* involved an action for injuries incurred in the construction of the Richmond-Petersburg Turnpike. The General Assembly created the Richmond-Peterburg Turnpike Authority ("RPTA") to construct, maintain, and operate the Turnpike project. RPTA, in fulfilling its responsibilities, contracted with Thorington Construction to provide the actual construction of the Turnpike and also contracted with an independent engineering firm to provide consultation services with regard to construction. The plaintiff, Anderson, was employed with the independent engineering firm. During the actual construction of the Turnpike, plaintiff was injured by an employee of Thorington Construction. The evidence indicated that both Thorington and the engineers were independent contractors with and under the RPTA. The court held that since both Thorington and the engineers were engaged in the trade, business and occupation of the Authority, neither was a stranger to the employment of the RPTA's work and that both Thorington's employees and the engineers' employees were "statutory employees" of the RPTA. In essence, Thorington and Anderson were statutory fellow servants of the RPTA. This being the case, both were under the canopy of the Workmen's Compensation Act, and were precluded from suing one another. *Anderson, supra,* at 400. Thus, Thorington was not an "other party" subject to a common law negligence action by the plaintiff.

This is precisely our case. By virtue of the Fourth Circuit's ruling in *Walker v. Gypsum*, I find that Vepco was indeed the statutory employer of the employees of Daniel and Davis. As a result, all were statutory fellow servants and are precluded from suing one another in common law negligence for work-related injuries.

This is consistent with the overall purpose of the Compensation Act which the Fourth Circuit states is:

> To bring within the operation of the Compensation Act all persons engaged in any work that is a part of the trade, business or occupation of the original party.

*Farish* at 79.

In this case, all parties were involved in the construction of the Bath County Project for the generation of electricity. This matter was within the trade, occupation and business of Vepco. As such, Vepco and this particular project should bear the costs of all work-related injuries associated with its construction.

The Plaintiffs cite the case of *Kramer v. Kramer*, 199 Va. 409, 100 S.E.2d 37 (1957), in support of their argument that both Daniel and Davis were co-independent contractors not engaged in the trade, occupation and business of the owner. *Kramer* involved a situation where the Arlington Church of Christ had contracted with separate independent contractors to perform certain work on the construction of a new church building. The plaintiff in that action, who was an employee of an independent contractor, was injured by the employee of another independent contractor in the construction. The court basically held that the two were co-independent contractors and that neither was involved in the trade, occupation and business of the owner of the project, the Arlington Church of Christ. The distinction between the Arlington Church of Christ and Vepco would seem clear. Not only had Vepco actually participated in the construction of generating facilities in the past, they did have approximately 500 employees on the job site at the Bath County Project supervising and coor-

dinating the construction of this Project. I believe the cases are clearly distinguishable on this point.

In light of the foregoing, I believe that the Defendants' Motion for Summary Judgment is well-founded.