## CIRCUIT COURT OF SURRY COUNTY

Gilmer, Administrator

v.

Daniel International Corp.

July 6, 1988

By JUDGE W. PARK LEMMOND, JR.

I have finally completed a review of the authorities surrounding the issue raised by the defendant's Special Plea in the above matter. The Court finds that the plaintiff is barred from a recovery against the defendant and hence sustains the Special Plea by the defendant.

As previously stated, the case of *Whalen v. Dean Steel Erection Co., Inc.*, 229 Va. 164 (1985), is controlling. In both cases, the subcontractor was the defendant. In the *Whalen* case, Dean Steel was held not to be a stranger to the business of Kroger/Pinkerton and Laws Company. Pinkerton and Laws was the general contractor in the *Whalen* case, and, of course, Virginia Power was acting as its own general contractor in the case at bar, and Daniel was the subcontractor. In both cases, the plaintiff was an employee of the general contractor.

The basic test that triggers the exclusivity provision of the Worker's Compensation Act is a determination of whether the defendant is an "other party" subject to suit under Section 65.1-41, Code of Virginia. The major cases that have developed the test, including *Whalen*, are most helpful in reaching the determination in this case. Comparisons are largely factual in determining whether or not the subcontractor was engaged in the trade, business,

or occupation of the owner/general contractor at the time of the injury or incident, or whether such subcontractor was an "other party" within the meaning of the aforesaid Section. *See Conlin v. Turner's Express, Inc.*, 229 Va. 557 (1985), citing the "Glamorgan" Case, *Floyd v. Mitchell*, 203 Va. 269 (1962).

The case at bar must also be viewed in the light of *Henderson v. Central Telephone Co.*, 233 Va. 377 (1987). The facts were somewhat different, for in the *Henderson* case, it was an employee of the contractor who filed suit against the owner, while of course in the case at bar, an employee of the owner has filed suit against the subcontractor. The *Henderson* case, also involving a public utility, broadens the test for public utilities by stating it is not simply what the owner and contractor do that defines their trade, business, or occupation, but also what they are supposed to do. The Court then distinguished private business entities and public utilities where the duties, obligations, and responsibilities are imposed by statute and regulation, etc. Section 56-234, Code of Virginia. In the *Henderson* case, of course, the public utility was the defendant, whereas in the case at bar, Virginia Power is the decedent's employer.

Federal courts have recently decided several cases concerning this issue. *See Best v. Washington Metro. Area Transit Auth.*, 822 F.2d 1198 (D.C. Cir. 1987) applying the *Henderson* test because the Transit Authority defendant was a governmental entity. Another federal case is *Kast v. PPG Industries, Inc.*, 664 F. Supp. 237 (W.D. Va. 1987) involving a general contractor's employee who was injured and filed suit against the subcontractor.

Another relevant and persuasive case is *Vess v. Davis Electrical Constructors, Inc.*, 613 F. Supp. 1047 (W.D. Va. 1985), containing certain factual similarities to the case at bar. In *Vess*, a carpenter employed by Daniel International, the construction subcontractor, was accidentally electrocuted at a Virginia Power construction site in Bath County, Virginia. The administrator of the estate filed suit against Davis, the electrical contractor. In *Vess*, because the plaintiff's employer and defendant were subcontractors, the court emphasized the "normal activities" analysis. The Court, however, focused on the activities of the owner, Virginia Power,

rather than either the defendant or the plaintiff's employer, and concluded that Virginia Power was the statutory employer of all employees of subcontractors. A suit of one subcontractor against the other was therefore barred.

In comparing the factual relationships of all these cases, the *Whalen* analysis still appears to be most applicable to the case at bar. The case at bar is by the owner's employee against the subcontractor, and the subcontracted work was clearly a "fraction of the whole." The emphasis, therefore, is not so much on the "normal activities" of Virginia Power and its habits of subcontracting, but rather on the comparison-based "stranger to the work" method of analysis. This analysis puts more importance on what kind of work Virginia Power was capable of doing, rather than on what it normally did or was required to do, although those aspects do have relevance, and in this case certainly, subcontracting this installation was a normal course for Virginia Power, and there was a lengthy record on subcontracting such work to Daniel.

Finally, one particular factor in the present case not found in the others was that Gilmer was performing his duties with the volunteer rescue group at the time of his death. A threshold test in determining whether a suit against a non-employer is barred under the Worker's Compensation Act is a determination that the employee was actually engaged in the work of his employer. The plaintiff urges that Virginia Power is not in the business of rescuing injured construction workers; however, this view is too narrow to accommodate the purpose of the Virginia Worker's Compensation Act. This purpose, stated in the same way by the Supreme Court of Virginia, the U. S. District Court for the Western District of Virginia, and the U. S. Court of Appeals for the Fourth Circuit, is:

> To bring within the operation of the Compensation Act all persons engaged in any work that is a part of the trade, business, or occupation of the original party. *See Vess, supra* quoting *Parish v. Courion Indus., Inc.,* 772 F.2d 74 (4th Cir. 1983), and *Bassett Furniture Indus., Inc. v. McReynolds,* 216 Va. 897 (1976).

The Fourth Circuit has often described this purpose in terms of holding the particular "project" accountable for injuries associated with it. As described in *Bristow v. Safeway Steel Products*, 337 F.2d 608 (4th Cir. 1964):

> The responsibility of the owner, contractor, or subcontractor to an injured worker or other person, as well as the injured party's rights against them or any other person, are measured first by reference to the relation of each to the work project. The aim of the act is that the economic burden of all parties arising from personal injuries incident to the undertaking be carried by, and confined to, the project.

The same sentiment was expressed in *Turnage v. Northern Virginia Steel Corp.*, 336 F.2d 837 (4th Cir. 1964):

> It is the aim of the Virginia Workmen's Compensation Act, as interpreted by the state's highest court, that the financial risk of accidental personal injuries inherent in any project be borne by and limited to that project to the extent specified therein. Consequently, where a project is undertaken either by an owner as part of his trade, business, or occupation or by a general contractor, the responsibility in damages of any party to a workman injured in the project must be tested with reference to his relationship to the overall project. If the defendant was engaged in work which was part of the undertaking of the owner or general contractor, regardless of his relationship to the injured workman and his immediate employer, the sections previously mentioned operate to place the economic loss upon the project and to limit the workman's recovery to that specified in the Act.

The organization and existence of the volunteer rescue group at Virginia Power, for the benefit of all workers at the Surry Power Plant, is fairly within the ambit of Virginia Power's business and operation at the site.