**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

RONNIE E. RICHARDSON,
Plaintiff-Appellant,

v.

No. 95-2020

L'EGGS BRANDS INCORPORATED, a
Division of Sara Lee Corporation,
Defendant-Appellee.

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
Samuel G. Wilson, District Judge.
(CA-94-508-R)

Argued: April 4, 1996

Decided: June 20, 1996

Before RUSSELL, WIDENER, and HALL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Carr Lanier Kinder, Jr., CARR L. KINDER, JR., P.C.,
Roanoke, Virginia, for Appellant. Jonnie Luane Speight, JOHNSON,
AYERS & MATTHEWS, Roanoke, Virginia, for Appellee. **ON
BRIEF:** Joseph A. Matthews, Jr., JOHNSON, AYERS & MAT-
THEWS, Roanoke, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Ronnie R. Richardson ("Richardson") appeals the district court's grant of summary judgment favoring L'eggs Brands, Inc. ("L'eggs") in Richardson's diversity tort action alleging personal injuries resulting from the negligence of L'eggs and its agents and employees. After reviewing <u>de novo</u> the district court's grant of summary judgment, and finding no genuine issues of material fact to exist, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986), we affirm the district court's decision.

I.

The evidence of record reveals that the following salient facts existed when Richardson suffered his injuries. Richardson was employed as a truck driver and delivery person for Ryder Distribution Resources, Inc. ("RDR"), a public motor carrier. L'eggs was engaged in the business of manufacturing, distributing, and selling women's hosiery products. Pursuant to its contract with L'eggs, RDR dedicated a certain number of its vehicles and drivers to exclusively deliver L'eggs products from the L'eggs Distribution Center in Salem, Virginia, to various storage warehouses leased by L'eggs or L'eggs sales merchandisers. Delivery duties include the loading and unloading of products at their destination.

At the time of his accident, Richardson was one of RDR's drivers dedicated to the L'eggs account. Richardson exclusively drove one of RDR's vehicles bearing the L'eggs logo on its side. When not in use, these tractor-trailers were housed on the premises of the L'eggs Distribution Center in Salem.

On June 30, 1992, while unloading L'eggs products at a warehouse leased by L'eggs in Charlotte, North Carolina, Richardson slipped

2

and fell on a piece of waste cardboard lying on the ground. As a result of his fall, Richardson fractured his spine. Thereafter, Richardson applied for and received worker's compensation benefits from RDR, under Virginia's Workers' Compensation Act. In June 1994, Richardson filed a diversity tort action against L'eggs alleging that L'eggs negligently failed to dispose of the waste cardboard in a safe manner. The district court granted L'eggs motion for summary judgment finding that L'eggs was not a suable "other party" under Virginia Law. Richardson filed no counter-affidavits opposing L'eggs motion for summary judgment.

Summary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, Anderson, 477 U.S. at 248-49, such as where the non-moving party has failed to make a sufficient showing on an essential element of the case that the non-moving party has the burden to prove, Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). While the court must draw any permissible inferences from the underlying facts in the light most favorable to the party opposing the motion, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986), "[o]nly disputes over facts that might affect the outcome of the suit" will preclude summary judgment. Anderson, 477 U.S. at 248.

II.

Richardson contends that the district court erred in granting summary judgment because issues of material fact exist as to whether L'eggs was a suable other party and as to the identity of Richardson's employer.**1** Richardson also contends the district court erred in apply-

_____

**1** Richardson now asserts that a genuine issue of material fact exists as to his employer's identity. Yet, the evidence of record reveals that Richardson never filed any affidavits or counter-affidavits disputing his employer's identity. Furthermore, Richardson never contested his direct supervisor's affidavit, which affirmatively stated 1) that Richardson was an RDR driver and 2) that at the time of the accident Richardson was awarded benefits under Virginia's Workers' Compensation Act from his employer RDR. We regard his failure to submit any opposing affidavits as a conscious waiver. See Morrissey v. William Morrow & Co., 739 F.2d 962, 966 (4th Cir. 1984), cert. denied, 469 U.S. 1216 (1985). A liti-

3

ing Virginia law. Regardless of the issues Richardson attempts to raise on appeal this case manifests a worker's compensation action and we shall review it accordingly.

A.

We begin our inquiry by analyzing the basic nature of the case before us. Richardson contends that the district court should have applied North Carolina law instead of Virginia law. But, because Richardson failed to substantiate his contention with supporting case law or indicate which of North Carolina laws should have been applied, our inquiry follows the basic tenets of federal civil procedure. Richardson lodged a diversity tort action against L'eggs in the United States District Court for the Western District of Virginia. The Rules of Decision Act, 28 U.S.C. § 1652, requires federal courts sitting in diversity to apply the forum state's substantive law and federal procedural law. In addition, federal courts are to apply the choice of law rules of the state in which the federal court sits. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). Consequently, the district court was required to apply Virginia's substantive law, unless Virginia's choice of law rules mandated that the court apply the laws of another state.

In Virginia, when an employee attempts to sue a third-party for injuries, and the injuries occurred in a state other than the state in which the employee's employment contract was made, the state in which the employee resides and the state in which the employee applies for workers' compensation benefits, Virginia's conflicts of laws turns to the workers' compensation law of the state in which the plaintiff received workers' compensation benefits. Solomon v. Call, 166 S.E. 467, 468-69 (1932). In the instant case, Richardson was employed under a Virginia employment contract with a Virginia

_____

gant may not rest on mere allegations or denial but must present affirmative evidence by his own affidavits, or by depositions, answers to interrogatories, and admissions on file that designate specific facts showing that there is a genuine issue for trial. Celotex Corp. v. Catrett, 473 U.S. 317, 324 (1986). If he fails to respond accordingly, summary judgment against him is appropriate. Fed.R.Civ.P. 56.

employer--RDR. His employment was covered by the Virginia's Workers' Compensation Act (the "Act") and Richardson received compensation from RDR under the Act. Pursuant to Solomon, the district court was required to look to the law of Virginia to resolve whether Richardson could bring an independent third-party tort action against L'eggs. We hold, therefore, that the district court did not err in applying Virginia law.

B.

For a worker to receive compensation under the Act for injuries sustained during the course of employment, the employee looks to his employer for recovery. When a primary business, the"owner," contracts with a "subcontractor," for the subcontractor to perform in whole or in part any work which is part of the trade, business or occupation of the owner, the owner is recognized as a statutory employer of any employee of the subcontractor; and is liable to the injured employee as if that employee had been immediately employed by the owner. Va. Code Ann. § 65.2-302(A).[2] This section places employees of subcontractors under the protective ambit of the owner's workers' compensation coverage. See Farish v. Courion Indus., Inc., 722 F.2d 74, 79 (4th Cir. 1983), aff'd on reh'g en banc , 754 F.2d 1111 (4th Cir. 1985); Vess v. Davis Elec. Constructors, Inc. , 613 F. Supp. 1047, 1049 (W.D. Va. 1985), cert. denied, 818 F.2d 30 (4th Cir. 1987). When such a hierarchy exists, the injured worker may seek workers' compensation from either the owner or his direct employer, the subcontractor, but not from both. Thus, the dispositive inquiry of whether the owner qualifies as a statutory employer is whether the injured employee was engaged in the owner's trade, business or occupation at the time of injury. See Slusher v. Paramount Warrior, Inc., 336 F.

---

[2] Virginia Code § 65.2-302 (A) provides:

> When any person (referred to in this section as"owner") undertakes to perform or execute any work which is part of his trade, business or occupation and contracts with any other person (referred to in this section as "subcontractor") for the execution or performance by or under such owner, the owner shall be liable to pay to any worker employed in the work any compensation under this title which he would have been liable to pay if the worker had been immediately employed by him.

5

Supp. 1381, 1384 (W.D. Va. 1971). And once an employee receives compensation, Virginia Code § 65.2-307 provides that the rights and remedies granted under the Act "shall exclude all other rights and remedies" of an employee to recover on an injury sustained during the course of his employment. But, if the owner is not a statutory employer, the injured worker may maintain an independent tort action against the owner for any injuries sustained. Slusher, 336 F. Supp. at 1384.

In the case at bar, L'eggs as the "owner" contracted with RDR, the "subcontractor," to perform the tasks of transportation and shipping, which are essential distribution functions of L'eggs' business of manufacturing, distributing, and selling women's hosiery products. Richardson, therefore, as an RDR employee hired to drive RDR's dedicated L'eggs trucks, was affirmatively engaged in L'eggs' trade, business, and occupation. Therefore, when recovering for injuries sustained as a result of his accident Richardson could have sought workers' compensation from either RDR or L'eggs; he chose RDR.

Despite the controlling law, Richardson maintains he has a viable cause of action to recover from L'eggs because he believes L'eggs to be a suable "other party." Richardson insists he can bring suit against L'eggs because the district court stated the converse of the law by stating that Richardson could not sue L'eggs because "L'eggs was engaged in RDR's business." We believe, however, because the district court reached the correct result, that Richardson was precluded from seeking recovery from L'eggs, the district court's misstatement does not in and of itself create a disputed issue of material fact warranting a reversal of summary judgment. Nonetheless, because the misstatement was made, we are compelled to examine what constitutes a suable "other party" under Virginia law.

Virginia Code § 65.2-309 permits an injured employee to maintain a tort action against the person causing his injury if the alleged tortfeasor is an "other party" within the meaning of the Act. The determinative test of whether a defendant is a suable "other party" questions whether the employee's injury was caused by the negligent act of a party who is a stranger to the trade, business, or occupation of his employer. Fetig v. Chalkley, 38 S.E.2d 73, 75-76 (1946); Whalen v. Dean Steel Erection Co., 327 S.E. 2d 102, 104, appeal dismissed, 44

6

U.S. 802 (1985). Whether a third party is engaged in the trade, occupation, or business of the employer depends upon the facts and circumstances in each case. Bassett Furniture v. McReynolds, 224 S.E.2d 323, 326 (1976). Therefore, when confronted with cases involving injuries sustained by subcontracted delivery-persons, the relevant inquiry is whether the driver was engaged in the work of the opposing party's employer when the accident occurred. Stout v. Onorati, 267 S.E.2d 154 (1980) (driver was plaintiff; determinative question was whether driver engaged in defendant storage company's business when driver killed); and Burroughs v. Walmont, 168 S.E.2d 107 (1969) (driver was plaintiff; principle issue was whether he was engaged in defendant general contractor's work when he was injured). In the instant case Richardson was engaged in delivering and unloading L'eggs products at the time of his injury.

Virginia law also recognizes that statutory employers are not suable "other parties" because statutory employers are not strangers to the employment and work engaged in by the injured employee. Statutory employers hire subcontractors to perform essential and divisible functions of their business enterprise. Cf. Evans v. Hook, 387 S.E.2d 777 (1990).

Given the above law, we answer the following critical questions to determine whether L'eggs is a suable other party:

> (1) Was the nature of L'eggs' business at the time of Richardson's injury, the business of manufacturing, distributing, and selling women's hosiery products?

> (2) Were shipping, transporting, and unloading women's hosiery products essential distribution functions of L'eggs' business of manufacturing, distributing, and selling those products? and

> (3) Was Richardson engaged in the distribution functions of shipping, transporting and unloading of L'eggs women's hosiery products when he was injured?

After reviewing the evidence of record, we have found the following answers to each of our inquiries. One, L'eggs was engaged in the

7

business of manufacturing, distributing, and selling women's hosiery products at the time of Richardson's injury. Two, the shipping, transporting, and unloading of those products were essential distribution functions of L'eggs business of manufacturing, distributing, and selling women's hosiery products. And three, Richardson was performing these essential distribution functions when he was injured. We find, therefore, that L'eggs is not a suable "other party" under Virginia law and Richardson's remedy is limited to compensation under the Act, which he has already received.

Thus, despite the district court's misstating that "L'eggs was engaged in RDR's business," the district court reached the right result --that the Act bars Richardson from maintaining a tort action against L'eggs. In accordance with our previous holdings to not reverse district courts' decisions when the correct results are reached, despite that some of the reasoning assigned was in error, see Stern v. Merrill Lynch, Pierce, Fenner, & Smith, Inc., 603 F.2d 1073, 1093 (4th Cir. 1979); Eltra Corp. v. Ringer, 579 F.2d 294, 298 (4th Cir. 1978); we affirm as modified the district court's grant of summary judgment favoring L'eggs.

III.

For the foregoing reasons, the decision of the district court is

AFFIRMED AS MODIFIED.

8